## Patterson v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. Criminal Law—No Power to Reverse for Insufficient Evidence.—The Court of Appeals has no power to reverse a judgment of conviction in a criminal prosecution upon the ground that the evidence is not sufficient to support the verdict, but only " for any error of law appearing on the record, when, upon consideration of the whole case, the court is satisfied the substantial rights of the defendant have been prejudiced." (Crim. Code, sec. 344.)

2. Practice—Waiver.—By his failure to either demur to the indictment or move to set it aside, in the court below, because it was not properly indorsed, as required by section 119 of the Criminal Code, and because it was not properly presented in court, as required by section 221 thereof, the defendant has waived his right to make those objections in the Court of Appeals.

3. Practice—Compliance with Code.—Where the record shows that the indictment was indorsed by the foreman of the grand jury "a true bill," and it sufficiently appears to have been signed by the foreman, the provisions of the two sections of the Code, above referred to, are substantially complied with; and the statement that the foreman of the grand jury "reported" an indictment,

---

\*This case was only recently ordered by the Court to be officially reported.

means practically the same thing as if it had said he "presented" it, as required by section 221 of the Criminal Code.

4. PRACTICE.—Where the record states that "the defendant is this day brought into court, . . . and came parties by counsel, and the said defendant having heretofore pleaded not guilty of the offense charged in the indictment, for his trial puts himself upon his country, and the attorney for the Commonwealth likewise," it is a fair if not necessary inference, and authorized by the record, that the indictment was read and the defendant's plea stated to the jury, as required by section 219 of the Criminal Code.

5. CONTROLLING STATUTE—RIGHT OF ONE CONVICTED OF CRIME TO TESTIFY.—When a section in the Revised Statutes has been omitted in the General Statutes, or any change made, however slight, in a general law, the whole law as found in the Revised Statutes, on that subject, must be considered and treated as repugnant to the provisions of the General Statutes (Broadus v. Broadus, 10 Bush 299.) And as the witness in this case did not belong to the class excluded by the General Statutes, he was properly permitted to testify. But he was a competent witness independent of that question, as the qualification of an accomplice to testify as a witness in behalf of the Commonwealth is recognized by section 241 of the Criminal Code.

6. EXTRA-JUDICIAL CONFESSION—CORROBORATION.—The courts are not authorized under the law to require other and additional evidence than the proof of confession to corroborate the testimony of an accomplice, or other than the testimony of an accomplice to accompany proof of a confession. It is wholly for the jury to determine whether the additional evidence does or does not conduce to prove the guilt or furnish the corroboration.

7. PRACTICE—VERDICT.—Where the indictment charged the accused with murder, and the jury found "the accused guilty as charged in the indictment, and fixed the punishment at death," although he may have been convicted of manslaughter under the indictment, the verdict sufficiently fixes the degree of the offense, as it is plain what offense the jury intended to find him guilty of and the punishment they intended to inflict.

8. BILLS OF EXCEPTION—BYSTANDER'S BILL.—The truth of what the judge of a lower court states or certifies as the bill of evidence, may be controverted by the affidavits of bystanders in the form of a bill of evidence, but the Court of Appeals has no authority to consider questions of law made during the progress of the trial of either a civil or a criminal case, unless they appear by the bill of exceptions, regularly approved and signed by the judge, to have been passed on by the court. (Garrott v. Ratliff, 7 Ky. Law Rep., 463.)

Patterson v. Commonwealth.

9. INSTRUCTIONS—REFUSAL NOT PREJUDICIAL WHEN SAME EMBRACED IN OTHER INSTRUCTIONS.—A refusal by the court to give an instruction which contained a correct statement of the law, is not prejudicial, when the same matter was substantially, and in such manner as to be clearly understood embodied in other instructions, which were given.

MATT O'DOHERTY, T. L. MARTIN AND N. R. HARPER FOR APPELLANT.

No brief in the record.

P. W. HARDIN AND AARON KOHN FOR APPELLEE.

No brief in the record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant having been indicted jointly with Albert Turner, though tried separately, for the murder of Jennie Bowman, and by the verdict of the jury found guilty and his punishment fixed at death, prosecutes his appeal.

It has been often decided that this court has no power to reverse a judgment of conviction in a criminal prosecution upon the ground the evidence is not sufficient to support the verdict. But as provided in section 344, Criminal Code, "a judgment of conviction shall be reversed for any error of law appearing on the record, when, upon consideration of the whole case, the court is satisfied the substantial rights of the defendant have been prejudiced." We will, therefore, refer to the evidence no more in detail than is necessary to determine whether it tends to establish the guilt of the accused, and whether he was tried and convicted according to law.

The crime with which he is charged was, as appears from the evidence, committed between the hours of nine and ten

o'clock of the forenoon, in the dwelling house of A. Y. Johnson, situated in a populous part of the city of Louisville. The statements of the deceased made, after she was injured, and, without objection, admitted in evidence as her dying declarations, and other circumstances, proved on trial, make it clear that the deed was done by two men. But no one but Albert Turner, who had been tried for the offense, and pleading guilty, convicted, testified directly that Patterson, the accused, was one of them, though there was other evidence, some of which will be hereafter referred to, tending to corroborate his testimony.

In behalf of the accused several witnesses testified to his presence in another and distant part of the city at or about the time, as proved by others, the crime was committed. But it was the exclusive province of the jury to decide as to their credibility, as of all witnesses in the case, and also, whether, giving full credence to their capacity to recollect, and disposition to truthfully testify in regard to the precise times and places they saw him, it was still impossible for him to have been at the house of Johnson when the crime was committed.

We will now consider the alleged errors of law:

1. It is contended the record fails to show the accused was legally indicted; and the two sections, it is argued, were violated or disregarded, are as follows:

"§ 119. The concurrence of twelve jurors is required to find an indictment; where so found, it must be indorsed 'a true bill,' and the indorsement signed by the foreman.

"§ 121. The indictment must be presented by the foreman in the presence of the grand jury to the court, and filed with the clerk, and remain in his office as a public record."

The record on the subject is as follows: "This day the

foreman of the grand jury reported an indictment a true bill against Albert Turner and William Patterson for wilful murder, and previous convictions, which said indictment is as follows, etc."

By his failure to either demur to the indictment or move to set it aside for the causes now relied on for reversal, both of which steps are authorized by the Code to be taken in the lower court, the accused has waived his right to make the objections in this court. But we think the two sections were substantially complied with. For it is expressly stated the indictment was indorsed a true bill, and it also sufficiently appears to have been signed by the foreman. The objection that it was "reported," instead of being, in the exact language of the Code, "presented," is a mere play upon words commonly understood when used in that connection to mean practically the same thing.

2. Following the provisions for impanelling and swearing the jury to try the issue in a criminal prosecution, is section 219, as follows: "The clerk or Commonwealth's attorney shall then read to the jury the indictment and state the defendant's plea."

The record is as follows: "The defendant, William Patterson, is this day brought into court, . . . and came parties by counsel, and the said defendant having heretofore pleaded not guilty of the offense charged in the indictment, for his trial puts himself upon his country, and the attorney for the Commonwealth likewise."

Though it is not in terms recited in the record that either the indictment was read or the defendant's plea stated to the jury, it does appear that an issue was formed, and for the trial of it the defendant puts himself upon the country, the jury in legal parlance being the country and the attorney

for the Commonwealth likewise." And, as the proceeding thus recorded by the clerk can be properly done only in presence of the jury, it is at least a fair, if not necessary, inference, and such as the record authorizes, that all that was necessary to be done to inform the jury what the charge was, by reading the indictment and what the plea was by stating it, was done. We, therefore, think the record shows the requirement of the section quoted was substantially complied with.

3. In the case of Commonwealth v. McGuire, 7 Kentucky Law Reporter, 814, it was decided by this court that all persons are now qualified to give evidence as witnesses in judicial proceedings, except those expressly excluded by section 8, article 8, chapter 29, Gen. Statutes.

Article 8 referred to contains eight sections, the last one being as follows: "If any person be convicted of either of the offenses described in the five preceding sections, he shall ever afterwards be disqualified from giving evidence in any judicial proceeding, or from being a witness in any case whatever."

By section 5, chapter 107, Revised Statutes, it was provided that, "except as otherwise expressly provided, no person who has been, or shall be convicted of felony, . . . . shall be competent as a witness in any case unless he has been pardoned; nor shall a person convicted of perjury, or subornation of perjury and the various statutory offenses of pardoned."

But in Broadus v. Broadus, 10 Bush, 299, the rule was laid down and ever since adhered to, that "when a section in the Revised Statutes has been omitted in the General Statutes, or any change made, however slight, in a general law, the whole law, as found in the Revised Statutes on that subject,

must be considered and treated as repugnant to the provisions of the General Statutes."

As, therefore, section 8, article 8, chapter 29, relates to the subject of disqualifying persons as witnesses who have been convicted of crimes, and is the only section in the General Statutes containing any provision in regard thereto, it must be treated as controlling the question of Albert Turner's qualification as a witness in this case. And, as he does not appear to belong to the class excluded thereby, he was, we think, properly permitted to testify.

It is true, as section 8 reads, persons convicted of perjury and false swearing, denounced in sections 1 and 2, of article 8, are not excluded and may testify, while those convicted of subornation of perjury, be a competent witness although the same class, described in the five succeeding sections, are disqualified. Obviously that omission was not intended and resulted from oversight. But it does not affect the question of Turner's competency one way or the other, for, as said in Broadus v. Broadus, "this court can not . . . . look to the Revised Statutes to supply any defect that may appear in any general law introduced in the General Statutes, except such laws as are expressly left unrepealed." If there was any doubt on the subject it would be removed by section 241, Criminal Code, hereafter quoted, where the qualification of an accomplice to testify as a witness in behalf of the Commonwealth is recognized.

4. It is contended the court erred "in failing to instruct the jury that evidence of extra judicial confession of guilt was not such evidence as the law makes necessary to corroborate the evidence of Turner, an avowed accomplice; and also erred in failing to instruct the jury that Turner's evidence could not furnish the corroboration necessary to the support of evidence of an extra judicial confession."

The two sections of the Code relating to proof of confession, and to the testimony of an accomplice, are as follows:

"§ 240. A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with proof that such an offense was committed.

"§ 241. A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence, tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows that the offense was committed, and the circumstances thereof."

In Greenleaf on Evidence, it is said that all confessions of this kind, extra-judicial, are receivable in evidence, being proved like other facts, to be weighed by the jury. But in the United States the prisoner's confession, where the *corpus delicti* is not otherwise proven, has been held insufficient for his conviction. See secs. 216-'7, and cases cited.

The same author further says, that there is no rule of law requiring the testimony of an accomplice to be corroborated by other evidence. But that it is now so generally the practice of judges to advise juries not to convict of felony upon the testimony of an accomplice alone, and without corroboration, that its omission would be regarded as an omission of duty on the part of the judges. Sec. 380.

Sec. 240. of the Code is consistent with and was intended to give legislative sanction to the rule applicable to the confession of a defendant, just as it had previously been. And section 241 is in accord with the uniform practice of the courts at the time the Code was adopted.

But there is a material difference between the two sections. For while one relates to the legal effect to be given to a confession when proved as a fact, the other not only pre-

scribes the legal effect which may be given to the testimony of an accomplice when credited, but also determines the condition upon which the jury may give any credence to it.

The converse of the proposition stated in sec. 240 is, that if the confession is accompanied with proof such offense was committed, that is, with proof of the *corpus delicti*, it will warrant a conviction. But such proof is not, according to the plain language of sec. 241, sufficient corroboration of the testimony of an accomplice to authorize a conviction, other and additional evidence tending to connect the defendant with the commission of the offense being required.

In Craft v. Commonwealth, 80 Ky., 349, it was held to be the duty of the court when an accomplice testifies for the Commonwealth to instruct the jury as to the law contained in section 241; and the court has, in this case, properly given such an instruction.

In the case of Cunningham v. Commonwealth, 9 Bush, 149, it was said: "The manifest meaning of this provision (the same as section 240) is, that, besides the proof of confession a defendant may have made of his guilt, unless made in open court, there must, to warrant a conviction, be other evidence conducing to prove him guilty of the offense alleged to have been committed by him." And the court did, in this case, following the rule there laid down, give the following instruction: "Any confession of the accused, or statement amounting to such, if there be such in the case, will not warrant his conviction, unless same is accompanied with other proof that the offense charged was committed, and tending to connect the accused with the commission thereof."

Although the conclusion, announced in the Cunningham case, is somewhat different from the views just expressed, we would not have hesitated to reverse the judgment if the

court had failed to instruct the jury substantially in accord-
ance with the ruling in that case, because it was the law, as
expounded by this court, when the accused was tried.

But  the instruction, which  it is  contended  by  counsel
should have been given, but refused, is entirely different
from and beyond the range of the ruling in that case, and
consequently is not sustained by it.  The fundamental error
in that instruction is that without warrant of the Code, ex-
press or implied, it  gives  to the court what  belongs ex-
clusively to the jury, the power to judge of the weight and
sufficiency of the evidence in establishing a fact.  For while
it is made the duty of the court, by sec. 240, as construed in
the Cunningham case, to instruct the jury not to convict
upon proof of a confession by the defendant, without other
evidence conducing to prove his guilt; and  by section 241
that a conviction can not be had, upon the testimony of an
accomplice, unless corroborated; it is a question of fact and
not of law, and, therefore, for the jury and not the court to
determine, whether other evidence introduced does or does
not conduce to prove the guilt or to corroborate

It seems to us it would be a palpable  usurpation of  the
power given to the jury, for the court to assume authority
to direct them what weight is to be given to any particular
evidence in determining a question of fact  submitted to
them, unless in such case as the law in express and unam-
biguous terms authorizes and requires.  And as the law
does not authorize the court to require other and additional
evidence  than the proof of confession to corroborate the tes-
timony of an accomplice, or other than the testimony of an
accomplice to accompany proof of a confession, we think
the court properly refused to give the instruction referred
to.  It is not the policy of the law, nor consistent with our

form of government to enlarge the power of courts, and correspondingly contract that of juries, in determining issues of fact involving life and liberty, and certainly can not be done where it is not expressly provided by statute.

5. One of the witnesses was permitted to state on the trial that he had, on a certain occasion said to another person he could discover with his naked eye a spot of blood on the hat band of the accused. But inasmuch as he testified before the jury to the same fact, we do not see how the accused was prejudiced.

6. The verdict of the jury is in these words: "We of the jury find the accused, William Patterson, guilty as charged in the indictment, and fix the punishment at death."

Counsel contend that verdict does not conform to the Code, does not fix the degree of the offense, and ought, therefore, to have been set aside.

Section 262 of the Code provides that upon an indictment for an offense, consisting of different degrees, the defendant may be found guilty of any degree not higher than that charged in the indictment, and may be found guilty of any offense included in that charge in the indictment.

And by section 257 it is required that in a general verdict of guilty the offense and the degree of the offense and the punishment be fixed.

As the accused is charged in the indictment with murder and nothing else we think the verdict describes that offense with sufficient certainty to meet the requirement of the Code. And although murder and manslaughter are degrees of homicide, and under an indictment for the former a person may be convicted of the latter, yet as murder itself is not divided by our statute into degrees, as is the case in some other States, that part of section 257 requiring the degree

of the offense to be fixed in the verdict has no application to this case.

The language of the verdict seems to us too plain for doubt as to either the offense the jury intended to find the accused guilty of or the punishment fixed.

7. The bill of exceptions shows that, whenever an objection was made to the conduct of the attorney for the Commonwealth in his closing argument to the jury, the court ruled in favor of the defendant.

But it appears that what is called a by-stander's bill of exceptions was prepared, and is now before us, which purports to show that during the argument of the attorney for the Commonwealth certain statements were improperly made to the prejudice of the rights of accused, which, though objected to by his counsel, the court failed to exclude from the consideration of the jury or to pass on.

Section 337 of the Civil Code, by which proceedings in criminal as well as civil cases are regulated, provides that "a party objecting to the judge's correction of an exception which purports to state the evidence, may within five days after the bill is signed, file the exceptions as written by him, if its truth be attested by the affidavits of two by-standers." But no authority is given to this court to consider questions of law made during the progress of the trial of either a civil or criminal case unless they appear, by the bill of exceptions, regularly approved and signed by the judge, to have been passed on by the court. Nor are we authorized to assume, upon the evidence of a by-stander's statement, that the court failed or refused to pass upon such questions when made.

In Garrott v. Ratliff, 7 Ky. Law Rep., 463, this court said: "The truth of what the judge states or certifies as the bill

of evidence may be controverted by the affidavits of by-standers in the form of a bill of evidence, but when he certifies as to his own rulings and exceptions taken during the progress of the trial, we know of no practice that authorizes his statement, or the verity of the record as made up, to be assailed either by by-standers, or the affidavits of parties interested in the litigation."

It is proper to say, in justice to the judge before whom this case was tried, that he states every objection made to the argument of the Commonwealth's Attorney, which was heard by him, he passed on. And for obvious reasons of public policy his statement should be taken in preference to that of by-standers.

8. For the accused the following instruction was asked and refused by the court: "The jury can not convict the accused on a mere preponderance of the testimony, but the law presumes his innocence until he is proved guilty to the exclusion of a reasonable doubt."

That instruction contains the law, and the refusal of the court to give it as asked would be sufficient cause for reversal, if the same idea was not fully expressed in some other instruction. But if it was substantially, and in such manner as to be clearly understood, embodied in another instruction, the refusal of it in the form presented did not nor could prejudice the defendant.

Instruction No. 5, given by the court, is as follows: "The law presumes the innocence of the accused, and it is the duty of the jury, if they can reasonably do so, to reconcile all the facts and circumstances of the case with that presumption. And if, upon the whole case, the jury entertain a reasonable doubt of the guilt of the accused, or of any material fact necessary to his guilt having been proven, then they should find him not guilty."

And in instruction No. 1 the jury were told in substance that, in order to convict the accused, they must believe, from all the evidence to the exclusion of a reasonable doubt, he was guilty of the offense charged.

It seems to us these two instructions so fully convey the idea contained in the instruction refused, that any jury of ordinary intelligence would readily understand that they have no right to convict a defendant of a criminal offense upon a mere preponderance of the testimony. For a belief so decided and clear as to be beyond reasonable doubt can not possibly be produced in the mind of a man, who reasons at all, by mere preponderance of evidence.

We have carefully examined the record in this case, and, perceiving no error of law occurring at the trial to the prejudice of the substantial rights of the accused, the judgment must be affirmed.