CASE 21—PETITION EQUITY—OCTOBER 11.

## Couchman's Admr. v. Couchman.

APPEAL FROM CLARK CIRCUIT COURT.

A GIFT BY AN ADOPTED DAUGHTER TO HER FOSTER MOTHER of her entire estate, consisting of three thousand dollars ($3,000) in money, was not because of the relation of the parties either conclusively or *prima facie* fraudulent. And as the evidence shows that the gift was purely voluntary, was fully understood by the daughter, and was not unreasonable under all the circumstances surrounding the parties, and that no undue influence was exercised by the mother, it was not actually fraudulent, and will not be set aside by the chancellor.

B. F. BUCKNER, GEO. B. NELSON AND GIBSON TAYLOR FOR APPELLANT.

Where relations of special trust and confidence exist, and in cases where one stands *in loco parentis* to another, and majority has been but a short time attained, the law scrutinizes with a jealous eye any transaction between the parties, and if it appear that under the influence or during the continuance of the confidential relation between the parties an unjust and unreasonable disposition is made by one of the parties in favor of the other, in the absence of independent legal advice or consultation with disin-

Couchman's Admr. v. Couchman.

terested friends, the law will stamp the transaction as fraudulent
and void. (Taylor v. Taylor, 8 How., 183; Garnsey v. Mundy, 24
N. J. Eq., 243; Carter v. West, 93 Ky., 211; Coutts v. Ackworth L.
R., 8 E., 558; Everet v. Everet, L. R., 10 E., 405; Rhodes v. Bate,
L. R., 1 Ch'y Ap., 252; 1 Story's Eq. Jur., secs. 307, 309.)

BECKNER & JOUETT for appellee.

Conceding for the argument's sake that the appellee occupied toward
appellant's decedent a confidential relation, as technically un-
derstood in the law, the only effect of that is to throw upon ap-
pellee the burden of proving that the donor acted voluntarily,
freely and intelligently. (Woods' Ex'or v. Devers, &c., 14 Ky.
L. R., 81; Walliston v. Tribble, L. R. 9 Eq., 441; Garnsey v. Mun-
dy, 24 N. J., Eq., 249.)
    The record not only fails to show a single substantive fact to
support appellant's claim, beyond the mere relation of the par-
ties, but on the contrary presents as strong a case of a free, intel-
ligent and natural gift as could be conceived.

JUDGE PAYNTER delivered the opinion of the court.

Benjamin W. Couchman was a citizen of Clark county.
He died in August, 1887, leaving as his widow the appellee,
Elizabeth J. Couchman. He had no children. The appel-
lant's intestate, Amanda Couchman, was his niece, and in
her early infancy she was taken by him and his wife and was
reared and educated by them. She continued to live with
them until his death, and afterward she lived with the
widow until her death.

Couchman possessed quite a valuable estate at his death.
He made a will devising a considerable portion to his widow.
He bequeathed to Amanda Couchman $3,000, to be paid
her when she arrived at the age of twenty-one years, which
occurred, according to the conclusion of the executors of
his will, in January, 1888, but from the testimony of her
mother, who said she was born in 1864, she became twenty-
one in 1885; however, this is not an important matter, as it

is conceded she was twenty-one years of age when she was paid the legacy. She received it on the — day of February, 1888.

On the 17th day of April, 1888, she made a gift of it to the appellee, Elizabeth J. Couchman. This action was instituted to test the validity of that gift. That it was made is conceded in argument. Amanda Couchman lived until August, 1891.

It is contended by appellant that the gift was invalid because it was procured by the undue influence which the appellee had over the intestate by reason of the confidential relations existing between them; that it was made without the advice of counsel; that no power was reserved to revoke it; that the transaction was not fair and proper, and was very unreasonable and improvident, as the $3,000 was her entire estate. This is substantially the contention of counsel for appellant.

On the other hand, it is contended that the gift was made freely and without any influence on the part of the donee whatever; that the donor fully understood the effect of the transaction, and that it was her purpose to vest the money absolutely in the appellee. So far as this record shows no advice was sought or obtained by the intestate before she parted with her money.

The tenderest and most affectionate relations existed between Amanda and her "mamma," as she always called Mrs. Couchman, though not related by blood. In her infancy no mother could have tended a child more lovingly than Mrs. Couchman did her. The kind offices of a mother were always bestowed upon her by her "mamma." When she reached the age of fourteen Amanda's health failed. The deep and tender affection of Mrs. Couchman for her is manifested by the most affectionate attentions and careful nurs-

ing. This continued until her restoration to fairly good health. From that time until her death she continued in a delicate condition, which frequently resulted in spells of serious illness and suffering, yet she continued bright and cheerful, and participated in society as other young ladies in the neighborhood. She was maintained by her uncle until his death in a way that was suited to his comfortable circumstances, and likewise by Mrs. Couchman from that time until her death.

Amanda was a young lady of at least fair attainments and intellect, with much more than the average will power, so much so that those whose acquaintance with them enabled them to know, entertained the opinion that hers dominated that of Mrs. Couchman. There is no evidence in this record that Mrs. Couchman solicited the gift or that she ever expressed a desire that it should be made to her. There is not the slightest evidence that Amanda did not fully understand the effect of the transaction.

The proof is complete, without the slightest countervailing evidence, that the gift was made. The money was drawn from a bank and in the presence of witnesses delivered to Mrs. Couchman. In addition to that evidence a number of witnesses, of whose credibility no doubt is entertained, testify that Amanda had told them that she had given the money to Mrs. Couchman; that the Couchmans had caused her "mamma" a great deal of trouble over her uncle Ben's will; that her "mamma" had been the cause of the money being willed to her; that she wanted her to have it, and she did not want any trouble over her will. It is also proven that she said her "mamma" would never allow her to want for anything; that she had made her will, by which she was to receive $6,000, the use of a farm for four years, worth

$600 per year rent, and she was to have the home in Winchester, worth over $4,000.

The record shows that Mrs. Couchman purchased this house paying more than $4,000 for it, and in effect used the $3,000 which Amanda gave her in part payment of it. At the instance of Mrs. Couchman the fee simple title thereto was conveyed to Amanda, subject to her life estate, but in the event she survived Amanda the fee was to vest in her.

Much importance is given by counsel for appellant to the fact that confidential relations existed between the parties, and Mrs. Couchman stood *in loco parentis* to Amanda, and that as such relations existed at the time of the gift the law scrutinizes the transaction with a jealous eye, and if an unjust and unreasonable disposition is made by one of the parties in favor of the other, in the absence of independent legal advice or consultation with disinterested friends, the law will stamp the transaction as fraudulent and void.

The rules of law which apply to transactions between attorney and client, guardian and ward, trustee and *cestui que trust*, and like confidential relations, are not applicable to the transaction between Mrs. Couchman and Amanda Couchman. Without conceding they should do so, as Mrs. Couchman stood *in loco parentis*, we will consider the rules of law which should determine the effect of the transaction are such as are applicable to transactions between parent and child.

As it does not appear the intestate had legal advice or consultation with disinterested friends, the contention of counsel for appellee is that the law stamps the transaction not *prima facie* void, but *ipso facto* fraudulent and void.

To sustain their position some English authorities are cited, but, while we have considered them, we deem it unnecessary to discuss them in our review of this case. We

do not agree with counsel that the relations existing between the parties stamp the transaction as fraudulent and void, or even *prima facie* so.

To answer this claim it is but necessary to refer to the case of Jenkins v. Pye, 12 Peters, 253, 254, in which the court said: "But the grounds mainly relied upon to invalidate the deed were that, being from a daughter to her father, rendered it at least *prima facie* void; and if not void on this ground, it was so because it was obtained by the undue influence of paternal authority. The first ground of objection seeks to establish the broad principle that a deed from a child to a parent conveying the real estate of the child ought, upon considerations of public policy growing out of the relation of the parties, to be deemed void; and numerous cases in the English chancery have been referred to which are supposed to establish this principle. We do not deem it necessary to travel over all these authorities. We have looked into the leading cases and can not discover anything to warrant the broad and unqualified doctrine contended for on the part of the appellees. All the cases are accompanied with some ingredient showing undue influence exercised by the parent, operating upon the fears or hopes of the child, and sufficient to show reasonable grounds to presume that the act was not perfectly free and voluntary on the part of the child; and in some cases, although there may be circumstances tending in some small degree to show undue influence, yet, if the agreement appears reasonable, it has been considered enough to outweigh light circumstances, so as not to affect the validity of the deed. It becomes the less necessary for us to go into a critical examination of the English chancery doctrine on this subject, for, should the cases be found to countenance it, we would not be disposed to adopt or sanction the broad principle contended for, that

the deed of a child to a parent is to be deemed *prima facie* void."

The case of Taylor v. Taylor, 8 How., 183, is cited by counsel for appellant. That case does not, as we understand it, sustain counsel. In that case the daughter conveyed all the property she had to her mother during her life and at her death to go in equal portions to the grantor and her brothers and sisters.

The ground on which the deed was impeached was that it was founded on no real consideration and made whilst she was living in the family of her parents; that it was extorted from her by false representations, both as to her filial duties and her rights to the property left her by her uncle, and of extreme urgency and harsh treatment on the part of her parents to procure its execution, and of the hope by a compliance with these importunities of reconciling her parents to her marriage with her husband, which marriage they had theretofore opposed.

The court in that case, in discussing the evidence to sustain the grounds alleged for the impeachment of the deed, said: "The intrinsic evidence flowing from other conduct of the parties to these transactions and that presented by the written documents in the case impart to the above allegations a force equal if not surpassing that which an explicit narrative by witnesses could give them."

The court in that case, in stating its conclusions, said: "From a careful analysis of the facts and circumstances of this case we think the conclusion can not be resisted that the deed . . . was not a fair and voluntary transaction, but was drawn from her by means and under influences which rendered that conveyance **void**."

Counsel for appellant cite the case of Garnsey v. Mundy, 24 N. J. Eq., 249. The conveyance in that case was to

grantor's mother and the grantor's infant children.   In that case the court reviewed the English cases cited by counsel in this case.   In decreeing a cancellation of the deed, the court said: "The testimony of all the parties to the transaction, the grantor, her mother and uncle, had been taken in the cause.   It satisfies me that the deed was not 'the pure voluntary and well understood act of the grantor's mind, (Lord Eldon in Huguenin v. Baseley, 14 Ves., 273), but was unadvised and improvident, and contrary to the intention of all of them.' "

In the case at bar it is not pretended that the intestate desired to revoke the gift or that she ever *even* expressed regret that she had made it, nor is it intimated that she did not understand the effect of the transaction.   Her frequent declarations, after the gift was made, with reference thereto, shows clearly she understood the transaction; that she had not reserved the power to revoke the gift and that she had no desire to do so.

It is insisted that the transaction was improvident and unreasonable.   In this we do not agree with counsel.

The appellee was able to provide abundantly, luxuriantly, for the intestate, whom she loved so fondly, and for whom she had so affectionately cared in the past.

This was a guarantee for the future.   So far as this record shows neither of them had reason to anticipate that her life was to be so brief, yet each had reason to fear that she might not survive her disease.   Both knew that she was incapable of making her own support.   She probably knew her medical bills would be large.   If so, her anticipations were more than realized, as they amounted to several hundred dollars from the transaction to her death.   She could but know, if she relied upon the $3,000 to support herself and pay medical bills, it would soon be exhausted.

From her knowledge of Mrs. Couchman's conduct in the past, and from the information she claimed to possess, and which is not denied, she knew that, while she lived, she would be well cared for, and at the death of Mrs. Couchman, would enjoy a large part of her estate.

As an evidence of the correctness of her conclusions she lived to see Mrs. Couchman have conveyed to her the fee simple title to the very property in which, in part payment, the $3,000 had been invested. It was not an improvident transaction.

We conclude that the gift was voluntary; that it was made without any intention to revoke it; that she fully understood the effect of it, and that it was not drawn from her by means and under influences which render it void.

The judgment is affirmed.