CASE 9—PROSECUTION AGAINST GEORGE MILLER FOR SETTING UP A
FARO BANK.—DEC. 11.

# Miller v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

DEFENDANT CONVICTED AND APPEALS. AFFIRMED.

GAMING—INDICTMENT — DUPLICITY — EVIDENCE — INSTRUCTIONS — RE-
MARKS OF PROSECUTING ATTORNEY—EFFECT—APPEAL—MATTERS
REVIEWABLE.

Held: Under Cr. Code Prac., section 124, providing that an indict-
ment must correctly and certainly describe the party, offense,
county, and circumstances, an indictment charging defendant
with setting up a faro bank, and specifying the setting up of
a faro bank, and "other machines and contrivances" for bet-
ting, was not bad for duplicity, the setting up of a faro bank be-
ing the only offense charged, and the only one on which a con-
viction could be had, and the allegations as to other
machines and contrivances being surplusage.

2. Kentucky Statutes, 1899, section 1960, makes it a crime to carry
on a faro bank or other contrivance used in betting, whereby
money may be won or lost. Section 1961 provides that a
change of name of the games specified in section 1960 shall
not prevent a conviction. Section 459 provides that there shall
be no distinction between the construction of civil or penal
statutes, but all shall be construed to carry out the intention
of the Legislature, and, by section 460, to promote their ob-
ject. In a prosecution for setting up a faro bank the court
instructed that a game played according to the rules of faro is
faro unless so modified as to be "generally known or called
by some other name than faro." · HELD, that as defendant could
have been convicted, though the game played was baccarat, if
that game is substantially the same as faro, and the court
should have charged that the game was faro if played accord-
ing to its rules, though modified in an immaterial particular,
the charge given was more favorable to defendant than warrant-
ed, and he could not complain.

3. In a prosecution for setting up a faro bank, the Commonwealth
attorney was precluded from asking defendant's witnesses if he

Miller v. Commonwealth.

had not testified before the ground jury that defendant was the dealer at a faro game, whereupon the attorney remarked to the court that witness had so testified.   The court ruled that the attorney should have made no such statement.   Defendant himself testified that he had been the dealer, and the only real question was whether the game was faro or baccarat.   HELD, that defendant was not prejudiced by the statement of the attorney.

4. Under Cr. Code Prac., section 281, providing that the decisions of the court on a motion for new trial are not subject to exception, and section 282, providing that exceptions shall be shown on the record by a bill of exceptions, objections to the closing argument of the Commonwealth attorney, shown only by affidavit on motion for a new trial, can not be considered on appeal.

5. In a prosecution for setting up a faro bank, evidence as to what witnesses saw going on in the room, and as to what a game of faro is, is admissible.

### ON REHEARING.

6. Cr. Code, section 126, provides that an indictment must charge but one offense.   Kentucky Statutes, 1903, section 1960, makes it an offense to set up or carry on a faro bank, a keno bank, or other machine used in betting, and section 1961 provides that an indictment for the violation of the preceding section may charge the accused in one count with any or all of the offenses mentioned therein.   HELD that, inasmuch as the two latter sections were adopted subsequent to the provisions of the Criminal Code, an indictment is not bad for duplicity because it charges more than one of the offenses specified in section 1960.

7. On a prosecution under section 1960, where the indictment alleged the setting up of a faro bank "and other machines," the fact that the court restricted the proof to the inquiry as to whether accused conducted a faro bank could not have been prejudicial to accused.

8. Uncontradicted affidavits filed in support of a motion for a new trial do not become a part of the record as if the facts stated therein had been recited in the bill of exceptions.

9. On a prosecution for setting up a faro bank a witness testified that he had seen some games going on, but that he did not know who was the dealer, although he knew defendant, and

the attorney for the Commonwealth was not permitted to ask the witness whether he had not testified before the grand jury that defendant was the dealer, whereupon the attorney remarked that the witness had so testified. Several other witnesses testified that accused was the dealer. HELD, that it was not error for the court to refuse to discharge the jury because of the statement of the attorney, defendant's remedy being by motion to have the statement withdrawn.

C. J. BRONSTON, ATTORNEY FOR APPELLANT.

The appellant complains of the following errors of the lower court on this trial:

1. Error in overruling demurrer to the indictment because it charges more than one offense. Cr. Code, sec. 126; Ellis v. Com., 78 Ky., 130; Waddle v. Com., 84 Ky., 279; Com. v. Monarch, 6 Bush, 298; Com. v. Barnes, 4 J. J. M., 177; Ritter v. Com., 18 B. M., 35.

2. The court misinstructed the jury.

3. The court erred in impanelling the jury.

4. The court erred in refusing to set aside the verdict of the jury because of its misconduct.

5. The court erred in refusing to set aside the swearing of the jury on account of the conduct of the Commonwealth's attorney.

6. The court erred in refusing to set aside the swearing of the jury upon the motion of the defendant, because of misconduct of the attorney for the Commonwealth in his closing argument before the jury, in making a statement to which the defendant objected, which objection was sustained, but the motion was overruled.

CLIFTON J. PRATT, ATTORNEY GENERAL, AND McKENZIE TODD, FOR APPELLEE.

1. The indictment did not charge but one distinct offense: the setting up, conducting and operating a faro bank. The words "other machines and contrivances" in the indictment should be treated as surplusage.

2. Averments concerning which there was a failure of proof, were not legally essential to the charge or necessary for the identification of the person or thing described and hence should be treated as surplusage.

3. The court properly overruled the demurrer to the indictment there being no motion to elect or strike out.

Miller v. Commonwealth.

4. The instructions were carefully drawn and the jury were authorized to find the defendant guilty, if they believe from the evidence, beyond a reasonable doubt that he conducted or operated a faro bank.

5. Where the attorney for the Commonwealth makes improper statements to the jury, which are objected to by counsel for the defendant, and the court sustains the objection and admonishes the jury not to consider them, and that they were improper, it would be an abuse of discretion for the court to discharge the jury. Cr. Code, sec. 192; Kentucky Statutes, sec. 226; Moore v. Com., 18 R., 129; Paynter v. Com., 21 R., 1562; New Cent. Dictionary for definition of "faro" and "baccarat."

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

The first question made in this case is as to the sufficiency of the indictment, which is as follows: "The grand jury of Fayette county, in the name and by the authority of the Commonwealth of Kentucky, accuse George Miller and Tim McCauliffe of the crime of setting up a faro bank, committed as follows, viz.: That said George Miller and Tim McCauliffe on the 23d day of December, 1902, in the county aforesaid, did unlawfully and willfully in rooms in a building on Limestone street, between Main and Short and over what is known as Heinl's saloon, set up, and carry on, keep, manage, conduct, and operate, a faro bank and other machines and contrivances commonly used in betting, whereby money and property might be won and lost, and at which money and property, and checks representing money and property, were won and lost, against the peace and dignity of the Commonwealth of Kentucky."

The indictment is based on the following statutory provisions:

"That whoever, with or without compensation, shall set up, carry on, keep, manage, operate or conduct, or shall aid or assist in setting up, carrying on, keeping, managing,

Miller v. Commonwealth.

operating or conducting a keno bank, faro bank, or other machine or contrivance used in betting, whereby money or other thing may be won or lost; or whoever shall, for compensation, percentage or commission, set up, carry on, manage, operate or conduct a game of cards, oontz or craps, whereby money, or other thing may be won or lost, or shall with or without compensation, percentage or commission, aid, assist, or abet in setting up, carrying on, managing, operating or conducting any game so set up, carried on, managed, operated or conducted, for compensation, percentage or commission, shall be fined five hundred dollars and costs, and confined in the penitentiary not less than one nor more than three years; shall be deemed infamous after conviction, and be forever thereafter disqualified from exercising the right of suffrage, and from holding any office of honor, trust or profit, whether it be State, county, city or municipal. The judgment of conviction in each case shall recite such infamy and disqualification, and shall not be valid without such recital. The provisions of this section shall not include nor be applicable to persons who play at such games, tables, banks, or with such machine, or contrivance, unless they take other part in setting up, conducting, keeping, managing, operating or carrying on such tables, banks, games, machine or contrivance, or aid or assist in setting up, keeping, conducting, managing or operating such game, bank, tables, machine or contrivance." Ky. St., 1899, section 1960.

"The change of name of any of the games, banks, tables, machines or contrivances mentioned or included in the preceding section, shall not prevent the conviction of any person violating the provisions thereof; but no prosecution shall be commenced under said section later than five years after the commission of the offense, nor shall

its provisions apply to persons who sell combination or French pools on any regular race track during the races thereon. An indictment for a violation of the preceding section may charge the accused in one count with any or all of the offenses mentioned or included therein." Ky. St., 1899, section 1961.

The defendants demurred to the indictment for duplicity. The demurrer was overruled. A separate trial was awarded, and on the trial of the appellant, Miller, the court limited the evidence to the setting up of a faro bank. By section 124, Cr. Code Prac., the indictment must be direct and certain as regards (1) the party charged, (2) the offense charged, (3) the county in which the offense was committed, (4) the particular circumstances of the offense charged, if they be necessary to constitute a complete offense. Under this section it has been held that the indictment in the part of it naming the offense charged must correctly designate the offense. Brooks v. Commonwealth, 98 Ky., 143, 17 R., 698, 32 S. W., 403; Commonwealth v. Tupman, 17 R., 217, 30 S. W., 661. The indictment before us in this part of it specifies the offense with which the defendants were charged as the crime of setting up a faro bank. This was the only offense charged, although in the accusative part of the indictment it is stated that he had not only set up a faro bank, but other machines and contrivances commonly used in betting; for the latter words must be rejected as surplusage, as only the offense of setting up a faro bank is charged against the defendants in the part naming the offense. Under this indictment no conviction could be had except for setting up or carrying on a faro bank, and the court properly so ruled, excluding all evidence except that relating to this offense.

The proof leaves no doubt that the defendant Miller set up and carried on a game at which money and property was won and lost. He rented the rooms and was the dealer in the game; but it is insisted that the game was not faro, but baccarat. Faro is played with a pack of fifty-two cards dealt from a box, with a layout of thirteen cards spread out on the table, or fastened to the table, or painted on it, or on the cloth over it. The dealer deals out the cards from the box. The players bet against the bank or dealer, placing their money on some card on the table, and winning or losing according as the cards come out of the box. In baccarat a similar box is used. The cards are dealt in the same way, except there are no sevens in the deck; the pack therefore consisting of forty-eight cards. The betting is done in the same way, and there seems to be no difference between the game of baccarat and faro, according to the evidence, except that in baccarat the sevens are not in the deck, and there is no seven in the layout on the table; and from the absence of the seven, as explained by the witness, "If you put a bet on the corner, the five next to the six, it is not a bet—it don't take the next card, because there is no next card there, but in faro it would involve the five or seven." Except for the absence of sevens, the game of baccarat, as shown by the evidence, is precisely the same as a game of faro in the way the game is played, the way the bets are made, and in every other respect. In illustration of this, it may be added that some of the witnesses for the Commonwealth, who had more or less experience in playing faro, took the game dealt by appellant to be a game of faro. On these facts the court instructed the jury as follows:

Miller v. Commonwealth.

"(1.) · If the jury believe from the evidence beyond a reasonable doubt, that the defendant, George Miller, in Fayette county, Kentucky, between the 23d day of December, 1897, and the 23d day of December, 1902, in a room in a building on Limestone street between Main and Short streets, in Lexington, Kentucky, and over what is known as Heinl's Saloon, conducted or operated a faro bank, which was commonly used in betting, and that money, or checks representing money, was then and there bet, won, and lost upon games played upon said faro bank,, the jury should find the defendant guilty, and unless the jury do so believe from the evidence beyond a reasonable doubt, they should find the defendant not guilty.

"(2.)  If the defendant did conduct or operate a machine or contrivance commonly used in betting, and if, upon said machine or contrivance, money or checks representing money were bet, won, and lost, yet the jury should find the defendant not guilty unless they believe from the evidence beyond a reasonable doubt that such machine or contrivance was a faro bank.

"(3.)  A game of cards played according to the rules of what is generally known as faro is a game of faro, and, even if the game so played is modified or changed in some immaterial particular, it is still a game of faro, provided the game as played is played in accordance with the rules and principles by which a game of faro is played, unless the game as so modified or changed is generally known and called by some other name than faro.  Any game not played in accordance with the rules and principles of faro is not a game of faro, and any game not played in strict accordance with the rules and principles of faro if the

game as played has a commonly known and distinctive name not that of faro, is not a game of faro."

The appellant complains of so much of the charge of the court as required the game to be "generally known and called by some name other than faro," and asked the court to charge the jury to find for him if the game had a distinctive name other than that of faro, commonly given to it by persons participating in it and familiar with it. ' It is earnestly insisted for him that the majority of people may never have heard of the game of baccarat, and that it was erroneous to require that the game should be generally known and called by that name. But it will be observed that this qualification made instruction 3 more favorable to the defendant than the instruction would have been without it. But for it the jury would have been authorized to convict the defendant if the game as played was played in accordance with the rules and principles of faro, although modified or changed in some immaterial particular. Not only so, but by the last clause of the instruction, if the game as played has a commonly known and distinctive name other than faro, there could be no conviction unless it was played in strict accordance with the rules and principles of faro.

These instructions were more favorable to the defendant than the law warranted; for by section 1961, Ky. St., 1899, above quoted, the change of the name of any of the games mentioned in section 1960 shall not prevent the conviction of any person violating its provisions. By section 459, Ky. Stat., 1899, there shall be no distinction in the construction of statutes between civil or criminal and penal enactments. All statutes shall be construed with a view to carry out the intention of the

Legislature, and, by section 460, are to be construed liberally, with a view to promote their objects. The purpose of the provision in section 1960, that the change of name shall not prevent a conviction is to avoid the confusion arising from the fact that games frequently have in the sporting world names not generally known among the class of people constituting the grand juries.

The rule is well settled that only the substance of the issue need be proved. 1 Bishop on Crim. Pro., section 488b; Jones v. Com., 2 Ky. Law Rep., 68; Williams v. Com-78 Ky., 93; Sutton v. Com., 97 Ky., 308, 17 R., 175, 30 S. W., 661; Boyd v. Com., 22 R., 1017, 59 S. W., 518. The defendant was informed by the indictment that he was charged with carrying on a faro bank in a certain house on a certain street in Lexington. He was therefore not misled as to the nature of the accusation against him, and if the game he carried on there was, in substance, a game of faro, although called baccarat, the substance of the issue was proved, and the defendant was properly convicted. In lieu of instruction 3 the court should have simply told the jury that if the game was played in accordance with the rules and principles of the game of faro, it was a game of faro within the meaning of the instructions, although it was modified and changed in some immaterial particular.

When the witness Ed. Oder was on the stand for the Commonwealth, and testified to seeing some games going on in the room, he was asked who was the dealer, and said he did not know. Being then asked if he knew the defendant Miller, he said he did. He was then asked if he was the dealer, and answered he did not think he was. Being then asked if he testified before the grand jury a month or six weeks before, he said he did. Then this occurred:

"Q. Didn't you testify that Mr. Miller was the dealer? (Defendant objects, which objection is sustained by the court.) In argument upon said objection the Commonwealth attorney made, in substance, the following statement: 'I do not intend to be trifled with in this manner, when I know that the witness testified before the grand jury that he played at a game of faro with Miller dealing, and that we sent out for Charley Oldham, and fixed the date and time.' The attorney for defendant moved the court to set aside the swearing of the jury because of the prejudice this statement by an attorney for the Commonwealth would make. Motion overruled. Defendant excepts." It appears from appellant's affidavit that the court ruled the Commonwealth attorney should make no such statement, but it is urged that for this the swearing of the jury should have been set aside. The remark was addressed to the court, and it must be presumed that the jury would try the case according to the evidence, as they were sworn to do, and not be governed by what one of the attorneys might improperly say in argument to the court. While the Comonwealth attorney, so far as appears, should not have used such words in the presence of the jury, we do not see that the defendant was prejudiced in any way by the remark, for when he came on the stand in his own behalf he admitted being the dealer in the game, and the only question, in effect, made, was whether it was faro or baccarat, and the exact facts on this question were proved by the witnesses which he himself introduced, there being no substantial contradiction in the evidence as to them.

Appellant also relies on misconduct in the Commonwealth's attorney in his concluding argument to the jury. But there is nothing in the record to show this except the

Miller v. Commonwealth.

affidavit of the defendant Miller filed on the motion for new trial. The decisions of the court upon the motion for new trial are not subject to exception. Cr. Code Prac., section 281. The exceptions of a party shall be shown upon the record by a bill of exceptions prepared, settled, and signed as provided in the Code of Practice in civil cases. Cr. Code Prac., section 282. None of the matters complained of as to the concluding argument of the Commonwealth's attorney are shown by the bill of exceptions. They can not, therefore, be considered in this court. Neither can the objections to the panel of the jury. Curtis v. Commonwealth, 110 Ky., 845, 23 R., 267, 62 S. W., 886, and cases cited; Knoxville Nursery Co. v. Com., 108 Ky. 6, 21 R., 1483, 55 S. W., 661.

The rulings of the court were more favorable to the defendant in the admission of evidence than they should have been. In a case like this the court may properly allow the witnesses to testify to what they saw going on in the room, and also allow proof to be made as to what a game of faro is, and then, on all the evidence, the jury should determine whether or not the defendant set up or carried on a faro bank.

On the whole case we see no error to the substantial prejudice of the defendant, and the judgment complained of is therefore affirmed.

Judges Paynter and Nunn, dissenting.

Opinion by Judge O'Rear overruling petition of appellant for rehearing. March 4, 1904.

The very earnest and able petition for rehearing in this case complains especially that the opinion ignores and is in conflict with a number of previous opinions of this court, as well as conflicts with section 126, Cr. Code, in holding the indictment not bad for duplicity. Commonwealth v.

Perrigo, 3 Metc. 5; Huff v. Commonwealth, 19 R., 1064, 42 S. W., 907, and Ellis v. Commonwealth, 78 Ky., 130, are cited and relied on. Whether or not the indictment may have been bad for the reason stated, under section 126 of the Criminal Code, does not appear to us to be material in this case. Section 1960 of the statute (Ky. St., 1903) denounces the offenses of setting up, keeping, carrying on, and managing, or assisting therein, a keno bank, faro bank, "or other machine or contrivance used in betting whereby money or other thing may be won or lost." Section 1961 provides: "An indictment for a violation of the preceding section may charge the accused in one count with any or all of the offenses mentioned or included therein." These sections were enacted in their present form April 8, 1893. As to the offenses therein created section 126 of the Criminal Code can not apply. It was certainly competent for the Legislature to provide that two or more offenses might be joined in one indictment. Having so provided subsequent to the enactment of the section of the Code relied on, the provisions of that section are manifestly inapplicable. For the same reason the decisions cited can not be authority against the sufficiency of this indictment. The Commonwealth might have charged in the indictment the commission of all the offenses named in section 1960, and upon proof of any one of them the defendant should have been found guilty. That the circuit court restricted the proof to the inquiry whether the accused conducted a faro bank can not be prejudicial to any legal right of his.

The position that uncontradicted affidavits filed in support of a ground for a new trial become a part of the record, as if the acts therein stated had been recited in the bill of exceptions, is clearly untenable. The office of the

bill of exceptions is to make a veritable record of the proceedings in court had upon the trial. It particularly shows the rulings of the trial judge upon the motions and objections to evidence as therein recited. It is confessedly the truth as to what occurred, and is the judge's certificate of it. If, after the trial, a party by his ex parte affidavit could enlarge the bill so as to incorporate new matter not appearing therein, including the action of the trial judge thereon, it would be to make the party's certificate supersede the judge's. It might as well be allowed that a party by such practice could diminish the bill by showing by his affidavit that what was certified to by the judge did not occur. The fact that the affidavit is uncontradicted we deem immaterial. That the bill of exceptions does not contain the matter is the judge's certificate that it didn't occur, for his certificate implies that the bill shows all that did occur, and is conclusive except that a bystander's bill may be made as to evidence. Section 333-340, Civ. Code; Patterson v. Commonwealth, 86 Ky., 313, 9 R., 481, 5 S. W., 387; Id., 99 Ky., 610, 10 R., 167, 5 S. W., 765. The question has been frequently passed upon by this court contrary to appellant's contention.

It would have been sufficient to say, as to the occurrence when the witness Oder was on the stand, that appellant did not move to exclude or withdraw the objectionable statement from the jury. His motion was to discharge the jury. In view of the fact that other witnesses had proven the same fact—that is, that appellant was the dealer in a game of faro at the place and time stated in the indictment—the motion to set aside the swearing of the jury was properly overruled. If appellant had moved to have the remark objected to withdrawn from the jury's

consideration it would doubtless have been sustained, and the jury admonished properly to disregard it. It is not every lapse in the course of a criminal trial that justifies the withdrawal of the case from the jury. There may be instances where the prejudicial effect of an objectionable proceeding is such that it can not be removed from the jury's mind, and therefore it would be improper to let that jury conclude the case. But here the witness Oder denied that he had seen the accused dealing the game of faro, though he was in the room at the time. The effect of this witness' statement, so far as connecting the accused with the game, was probably nil. The Commonwealth's attorney, in endeavoring to have him go further, essayed the statement to the court in the hearing of the jury that the witness had in his examination before the grand jury given different evidence. The sole effect of that statement, if testified to by a competent witness, would have been to impeach the witness Oder. However, if there had been no other evidence of appellant's guilt, the jury might have inferred that the Commonwealth's attorney was correctly stating what the witness had said under oath when not confronted by the accused, and that his statements were then true, and from that circumstance alone found that appellant was in fact the dealer in the game. But in fact other witnesses had testified that appellant was the dealer in that game. Therefore there was competent evidence of the main fact before the jury. The trial court at most should have excluded the Commonwealth's attorney's statement of what occurred before the grand jury with proper admonition, and proceeded with the trial. But, instead of asking for what he was entitled to, appellant asked for what he was not entitled to. His motion

was properly overruled. This conclusion is reached independent of the statement in appellant's affidavit in support of motion for new trial that the trial judge did exclude the objectionable matter. Nor is it based upon the fact that appellant subsequently testified in his own behalf that he was the dealer in the game, but relied on the claim that it was not faro, but baccarat. What was said in the opinion as to the statements of appellant in his affidavit and when a witness for himself was to show that by his own admissions in the record his substantial rights had not been prejudiced by the matter complained of.

The petition is overruled.

Chief Justice Burnam dissenting.