CASE 62.—PROSECUTION AGAINST GEORGE GORDON FOR MANSLAUGHTER.—January 25, 1910.

## Gordon v. Commonwealth

Appeal from Boyle Circuit Court.

M. C. SAUFLEY, Circuit Judge.

Defendant convicted and appeals.—Affirmed.

1. Criminal Law—Question for Jury—Peremptory Instruction.—There being any evidence, however slight, tending to connect accused with the commission of the crime in any degree, defendant is not entitled to a peremptory instruction, but the case should go to the jury.

2. Criminal Law—Instructions—Duty of Court.—The court in a criminal case must correctly instruct on every point warranted by the evidence, whatever instructions are asked for or offered.

3. Homicide—Self-defense—Instruction.—The act of deceased, when defendant struck out towards him with a whip, in getting out of his wagon, not being an assault on defendant, and there being evidence that after getting out of the wagon he made no effort to strike or harm defendant, till defendant had advanced on him with a pistol leveled on him, an instruction in effect that if such facts were found, there could not be an acquittal on the ground of self-defense was proper.

4. Homicide—Appeal—Harmless Error—Admission of Evidence.—Defendant having been found guilty only of manslaughter, the jury could not have believed that he was referring to deceased when he, on the way from the city to the place of trouble, said, as witnesses testified, that he had killed one person, and would or could kill another, but merely accepted it, as intended, as illustrative of what the witnesses testified, that he was drinking and in an ugly and quarrelsome mood, evidence of which character is admissible.

5. Criminal Law—Evidence—Remoteness.—Defendant, who was permitted to testify that he was sober at the time of the

Gordon v. Commonwealth.

homicide, was not entitled to testify to the details of a hus-
iness conversation he had an hour or so before as tending
to show such fact.

6.  Criminal Law—Evidence—State of Mind.—Defendant was
    not entitled to testify that as he was going along the road
    towards his home, and before the homicide he had no idea
    of killing any one, particularly deceased; it not being per-
    missible for him to show what he thought.

7.  Criminal Law—New Trial—Hearing of Motion—Cross-Ex-
    amination.—The Code prescribing no procedure, the court
    may, on a motion for new trial, permit cross-examination of
    the persons making affidavit of prejudice having been ex-
    pressed by jurors against defendant, and, being of opinion
    that cross-examination of the persons making the counter
    affidavits, mainly of a negative character, can furnish no
    additional light, may refuse it.

8.  Criminal Law—New Trial—Continuing Hearing.—The hear-
    ing of a motion for new trial may be set over to the term
    after that at which it is made.

9.  Criminal Law—Appeal—Denial of New Trial.—Denial of new
    trial, moved for on the ground of prejudice against defend-
    ant having been expressed by jurors, is not reviewable.

10. Criminal Law—Appeal—Affirmance.—It appearing from the
    record that no substantial errors, calculated to prevent de-
    fendant having substantial justice, were committed, con-
    viction will be affirmed.

ROBERT HARDING, C. C. BAGBY and J. W. RAWLINGS for
appellant.

JAMES BREATHITT, Attorney General, and TOM B. Mc-
GREGOR, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE LASSING—Affirm-
ing.

Appellant was indicted in the Boyle circuit court,
charged with the murder of Robert Brewer by shoot-
ing him with a pistol. Upon his plea of not guilty he
was tried, found guilty, and his punishment fixed at
21 years' confinement in the state penitentiary. To
reverse the judgment predicated upon this verdict he

prosecutes this appeal. The grounds relied upon for
reversal may be grouped into two classes: First, er-
rors occurring during the progress of the trial in the
admission and exclusion of evidence, and errors in
instructing the jury; and, second, errors occurring
after the trial, and during the pendency of the motion
for a new trial.

The facts, as gathered from the voluminous bill of.
evidence, are as follows: Appellant and the man he
killed were neighbors, living upon adjoining farms
in Boyle county, Ky., and had been on friendly terms
up to the time of the killing, which occurred on No-
vember 28, 1908. On this day, appellant and his
brother William had been to Junction City on road
wagons hauling lumber, and were returning home.
A young man or boy named Owens was driving the
team belonging to William Gordon on the return trip,
and William was riding with appellant in his wagon
some distance behind the boy. When the Owens boy
reached his mother's home, where he lived, and which
was about four miles out of Junction City, he stopped
the wagon on the roadside, unhitched the team, and
tied the horses to the fence and went on home. Short-
ly thereafter, appellant and his brother came up in
appellant's wagon and stopped, with appellant's
wagon nearly, if not quite, blocking the road. Robert
Brewer had also been to town that day, and was re-
turning home. With him in his wagon were George
Hafley and William Johnson. Following behind
Brewer's wagon came Denny Gordon in another
wagon. Brewer drove his wagon up to where the
Gordon wagons had stopped in the road, and here the
difficulty occurred. The facts as thus far detailed
are agreed to, but from this on the testimony of the
witnesses for the commonwealth differs so material-

ly from that of the witnesses for the accused that it can not be reconciled. This necessitates the giving of each theory.

Appellant testifies, and in the main is supported by his brother William, that when Brewer came up to where their wagons had stopped in the road he appeared in an ugly mood from drinking, and at once began cursing appellant, and demanded of him to get his wagon out of the road; that appellant thereupon spoke pleasantly to him, and at once drove his wagon up so that Brewer had ample room to pass; that after he had done this, and Brewer did not drive on, appellant asked him why he did not drive by, and offered, if Brewer wanted him to do so, to give the other half of the road; that at this offer on his part Brewer, with an oath, threw down his lines, leaped from his wagon, reached with his right hand toward the ground, and, as he arose from his stooping position, he was seized by both William Gordon and William Johnson, both of whom he threw or knocked down, and immediately began striking appellant over the head; that appellant backed away from him, and was against the fence and could go no further, and that he then shot him. On the other hand, the commonwealth shows, by the testimony of the witnesses George Hafley, Denny Gordon, and Lou and William Johnson, that when Brewer drove up behind appellant's wagon he said to appellant, "Get out of the road, or go on home so that I can pass," to which appellant replied, "I have given you half the road, you G—— d—— s—— of a b——, and if you want anything else I will give you half of that." Brewer then said, "I don't ask you no odds," and appellant answered this statement in kind, and, being upon the ground, advanced towards Brewer's wagon, with his

whip in one hand and a pistol in the other, and as he so advanced he cursed Brewer, and struck out or to·ward him with the whip. About this juncture appellant again called Brewer a s—— of a b——, and Brewer said he would not or could not stand that, and got out of the wagon and stooped as though to pick up something, when he was seized by William Gordon and William Johnson. He jerked loose from the one and pushed the other back, and struck out and perhaps hit appellant, who was coming at him with his pistol leveled on him, and cursing him as he came. Just then the pistol fired, and Brewer fell, mortally wounded, and died in 15 or 20 minutes. The bullet entered in front and passed entirely through the body. Deceased was unarmed, save for a pocket-knife which was found closed in his pants' pocket. Appellant was drinking. While these witnesses dif-fer on many points, as to the exact location of the teams, wagons, etc., they substantially agree on the main questions as to what was said and done. In ad-dition to this testimony of the eye-witnesses the com-monwealth proved by other witnesses that, while coming along the road from Junction City to the place where the difficulty occurred, appellant was boisterous, cursing, and swearing and shooting off his pistol, and declaring that he had killed one man and could or would kill another, some one or any one who crossed his path, or words to that effect.

On this evidence should the trial court have given a peremptory instruction? This court has often held that if there is any evidence, however slight, tending to connect the accused with the commission of the crime in any of its degrees, the case should go to the jury. Vowells v. Commonwealth, 83 Ky. 193, 8 R. 74; Patterson v. Commonwealth, 86 Ky. 313, 5 S.

W. 387; Commonwealth v. Murphy, 109 S. W. 353, 33
Ky. Law Rep. 141; Spencer v. Commonwealth, 122
S. W. 800. If the testimony of these four witnesses
is to be believed, the accused practically held de-
ceased up in the road, and deliberately sought and
provoked the difficulty by cursing him and attempting
to strike him, and then, when he offered to protect
himself, shot him down. The facts proven by the
commonwealth are far from such as would authorize
a peremptory instruction.

This brings us to a consideration of the correctness
of the instructions given; for, it being the duty of
the court in criminal cases to give the whole law of
the case as warranted by the facts proven, it is imma-
terial what instructions were asked for or offered.
If the instructions given do not accurately state the
law, or the court fails to give an instruction on a
point of law upon which the defendant is entitled to
have the jury instructed, the case must be reversed;
otherwise not. The court gave the following instruc-
tions:

"Gentlemen of the jury:

"(1) If you believe from the evidence beyond a
reasonable doubt that in Boyle county, and before the
finding of the indictment, namely, January 6, 1909,
the defendant, George Gordon, willfully, feloniously,
and with malice aforethought killed Robert Brewer
by shooting him with a pistol from which shooting
said Brewer presently died, then you will find the
defendant guilty of willful murder, and fix his punish-
ment at confinement in the penitentiary for and dur-
ing his natural life, or at death.

"(2) However, if you believe from the evidence,
beyond a reasonable doubt, that in this county, and

before the finding of the indictment, the defendant, in sudden affray or in sudden heat and passion, upon a provocation reasonably calculated to excite the passions of the defendant beyond the power of his control, willfully killed Robert Brewer by shooting him with a pistol, from which shooting said Brewer presently died, then you will find the defendant guilty of voluntary manslaughter, and fix his punishment at confinement in the penitentiary for a term of not less than 2 years nor more than 21 years.

"(3) If you believe from the evidence, beyond a reasonable doubt, that the defendant has been guilty under instruction No. 1 or No. 2, yet entertain a reasonable doubt as to the degree of the offense, then you will find him guilty of voluntary manslaughter, and fix his punishment at confinement in the penitentiary for a term of not less than 2 nor more than 21 years.

"(4) Although you may believe from the evidence to the exclusion of a reasonable doubt that the defendant shot Robert Brewer with a pistol, from which shooting said Brewer presently died, yet, if you further believe from the evidence that when he did so he believed, and had reasonable grounds to believe, that he was then in danger of death, or some other great bodily harm about to be inflicted upon him by said Brewer, then he had the right to use such means as in reason appeared to him to be necessary to avert the impending danger, real, or to him, apparent, even to the extent of so shooting and killing said Brewer, and in this event you will return a verdict of not guilty.

"(5) Although you may believe from the evidence, beyond a reasonable doubt, that in this county and before the date of the finding of the indictment the de-

fendant shot Robert Brewer with a pistol, and there-
by killed him, and you further believe from the evi-
dence that when he did he believed, and had reason
able grounds to believe, that he was then in real or
apparent impending danger of death, or some other
great bodily harm, about to be inflicted upon him at
the hands of said Brewer, yet, if you further believe
from the evidence to the exclusion of a reasonable
doubt, that when the defendant did not believe, and
have reasonable grounds to believe, that he was in
real or apparent danger of  death, or other  great
bodily harm at the hands of said Brewer, willfully
and feloniously brought on the difficulty by making
demonstration  to shoot said  Brewer with a pistol
with the intention of killing him and thereby made
the danger to himself on the part of Brewer excusa-
ble or justifiable in the protection of himself, or that
the defendant and said Brewer voluntarily entered
into the actual combat with the intention upon the
part of each to kill the other, or do the other some
great bodily harm, then you can not acquit the de-
fendant on the ground of self-defense or apparent
necessity.

"(6) You are instructed that, however abusive
may be the language of one of the combatants, it will
not justify an assault or battery upon the other, but
an assault and battery may be opposed by same, and,
further, that before either can take the life of the
other, or do him other great bodily harm and be jus-
tified by the law, the one so doing must believe, and
have reasonable grounds to believe, that at such time
he himself is in real or apparent danger of death, or
some  other  great bodily harm, impending at the
hands of the other.

"(7) If you have a reasonable doubt of the defend-ant being proven guilty, then you will return a ver-dict of not guilty."

These instructions are not open to the criticisms passed upon them. Nos. 1, 2, 3, and 4 are clear, con-cise and well written. They simply embody the law of murder, manslaughter, and self-defense with a direction to the jury that in the event they find the ac-cused guilty, and entertain a doubt as to the degree of his guilt, they must find him guilty of man-slaughter. Instruction No. 5 is predicated upon the testimony of William Johnson in particular, who says: "I put my hand on his shoulder, and said, 'Bob, I wouldn't have no trouble; he is drinking; I wouldn't have no trouble'—and he stopped, and then Mr. Bill Gordon run up and grabbed him around the waist, and about that time here come Mr. George Gor-don with his pistol, and he throwed it right down on him, calling him a s—— of a b——, right that way, (indicating) throwed it right down on his breast like." Up to that time appellant, who had, ac-cording to the testimony of this witness, offered to fight deceased, and approached him in a threatening manner and struck at him with the whip, was the ag-gressor, and deceased had offered to do him no vio-lence. Nor can the act of getting out of his wagon be construed to be an assault upon appellant, for he had a right to protect himself, and, it seems, started to do so when he was set upon by appellant's brother, and, just as he had freed himself from his grasp, this witness, Johnson attempted to prevent trouble, and while he is doing so appellant again approaches deceased, with his pistol leveled upon him, after de-ceased had stopped, thus clearly provoking or renew-ing and bringing on the difficulty, and clearly justify-

ing the court in giving instruction No. 5. No. 6 was given in appellant's favor, and for his benefit. No just ground of complaint can be made of these instructions. They are in no wise misleading or difficult to understand, and they cover fully every phase of the case as presented by the plea and evidence. As above stated, No. 5 was predicated upon the testimony of William Johnson; and, as he says that deceased made no effort whatever to strike or harm appellant after he got out of the wagon until appellant had advanced upon him with a pistol leveled upon him, it would have been an error prejudicial to the rights of the commonwealth for the court to have refused to instruct the jury as in instruction No. 5.

Now, as to the testimony of which appellant complains, given by the witnesses who saw, heard, and observed his conduct along the road between Junction City and the place of the difficulty. What does it all amount to? It simply goes to show that he was drunk and disorderly, and in an ugly, quarrelsome mood. Further than this it had no bearing upon the case. He testified fully concerning it all, denied that he was either drunk or drinking to excess, denied all of the statements attributed to him by these witnesses, and explained how he came to fire off his pistol on the road. The jury understood fully both the tenor and purport of this testimony. They did not believe that, when he said he had killed one man and would or could kill another, he was referring to deceased. If they had, their verdict would have evidently been for a much more severe penalty. The jury simply accepted this testimony, as it was intended they should, as illustrative of what the witnesses who were present when the killing occurred say, to wit, that the accused was drinking and in an

ugly, quarrelsome mood. The competency of evidence of this character was expressly approved in the recent case of Potter v. Commonwealth, 124 S. W. 317.

The excluded evidence of which appellant complains is as follows: He offered to testify to what he said to two men about a business matter an hour or so before the difficulty. What light the details of this business transaction could have thrown upon the question at issue we are unable to understand. Counsel contends that it would have shown him to be sober. He was permitted to testify that he was. He might have introduced these men with whom he had the business transaction, and had them testify that at that time he appeared to be sober, or was sober; but the court certainly did not err in refusing to permit him to give this conversation with them in detail. Again, appellant was asked if he had any idea of killing any one as he was going along the road toward his home on that afternoon, and particularly if he had any idea of killing deceased, and the court refused to permit him to answer; and in this ruling the court was entirely correct. He was permitted to show what he did, and he might, under some circumstances, be permitted to show what he said, but certainly not what he thought. He was charged with making certain statements. The question was not what he thought, but whether or not he made them. To allow him to testify to what he thought, rather than to what he said and did, would be to open the flood gates for all sorts of evil and the manufacture of testimony which the opposing side would have no possible way of meeting, and of which neither the truth nor the correctness could be ascertained. Appellant was permitted to deny

such of the statements attributed to him along the
road as he desired, and to explain his conduct where
and as far as it was capable of explanation, and
throughout the trial the court gave him much lati-
tude, and permitted his testimony to take a wide
range, amply sufficient to bring his defense in all its
force fully and fairly before the jury. After a most
careful and painstaking consideration of the record,
we are unable to discern any error prejudicial to ap-
pellant's substantial rights during the progress of
the trial. This leaves for our consideration only
those errors complained of as to the court's ruling
in reference to granting appellant a new trial.

On the motion for a new trial appellant pressed the
charge that two of the jurors, Prewitt and Duncan,
had formed and expressed opinions of his guilt, and
were very hostile towards him, and because of this
fact he had been unable to get a fair trial of his case.
This charge was supported by several affidavits. The
judge went fully into this complaint, and permitted
the commonwealth to cross-examine the witnesses
upon whose affidavits appellant relied to support it,
and, in addition, received and read affidavits offered
by the commonwealth to disprove the charge. Ap-
pellant complains that this was error; that the com-
monwealth should not have been permitted to cross-
examine his witnesses, unless he was also given the
right to cross-examine the commonwealth's witnesses.
The aim of the court was to get at the facts—to ar-
rive at the truth of the charge—and we are unable to
see how a full investigation can afford any just com-
plaint. The cross-examination of the witnesses for
appellant, who supported his charge, had the effect
of better enabling the court to judge of the correct-
ness of their testimony. If they could not stand the

test of cross-examination, the searchlight of investigation, they should not furnish the foundation for a new trial. The counter affidavits were in the main of a negative character; and, as the trial judge was of the opinion that a cross-examination could throw no additional light upon what was set out therein, he properly refused to allow it. His effort was to satisfy himself as to the truth of the charges made, and he could best determine what points he wanted cleared up. The Code maps out no line of procedure, and hence the trial judge is left to determine how the hearing shall be conducted; and, if he does not regard the affidavits offered in support of the motion as sufficiently explicit, he not only may, but should, cause the witnesses to be brought before him for further examination and cross-examination. This method of procedure is approved by Abbott in his Trial Briefs, Criminal Cases, and is supported by the text in 12 Cyc. p. 753.

The next contention of appellant is that the court erred in continuing the hearing of his motion for a new trial from one term of court to the next. The Code is explicit as to when the motion for a new trial shall be made, but does not direct when it shall be disposed of. It is the duty of the trial court, when such a motion is made, to give it that consideration that the character of the case and the importance of the question raised demands, and if, in furtherance of justice, he finds that he can not give to the question raised sufficient consideration at the term when made, it seems the ends of justice and the rights of parties applying for such relief demand that he set the hearing over to the succeeding term, and even longer if need be, to enable him to finally determine the points and questions raised. This practice has been ex-

pressly approved in civil cases many times.  Louisville Rock Lime Co. v. Kerr, 78 Ky. 12; Harper v. Harper, 10 Bush, 447; Turner v. Johnson, 35 S. W. 923, 18 Ky. Law Rep. 202; Trapp v. Aldrich, 67 S. W. 834, 23 Ky. Law Rep. 2432.  And in the case of the Louisville Chemical Works v. Commonwealth, 8 Bush (Ky.) 179, decided in 1871, the same question was involved, and the action of the trial court, in setting over the hearing of a motion for a new.trial to the succeeding term, was approved in the.following language: "There is no judgment in fact upon the verdict of a jury until the motion for a new trial, if made in proper time, is disposed of.  This motion suspends the judgment and it has no more effect than the verdict of the jury until the application for a new trial is overruled.  Any other construction of the law would deprive parties of the right to an appeal in all cases, where the court, for prudential reasons or otherwise, saw proper to continue the motion from one term to another, a right that the court can exercise, and over which neither the counsel nor his client have any control."  And in the later case of Commonwealth v. Tarvin, Judge, 114 Ky. 877, 72 S. W. 13, this method of procedure was again recognized as correct.  To the same effect is the text in 12 Cyc. 753, and Shipman v. State, 38 Ind. 549.  In Barnes v. Commonwealth, 70 S. W. 827, 24 Ky. Law Rep. 1143, Howard v. Commonwealth, 110 Ky. 356, 61 S. W. 756, 22 Ky. Law Rep. 1845, Hunt v. Commonwealth, 12 S. W. 127, 11 Ky. Law Rep 353, Coleman v. Commonwealth, 8 Ky. Law Rep. 607, and Smith v. Commonwealth, 31 S. W. 724, 17 Ky. Law Rep. 439, it is held that the refusal of the trial·court to grant a new trial because some of the jurors had expressed opinions to the effect that they were prejudiced

against the accused before they were accepted as jurors furnished no ground for exception under the Code. And, likewise, it had so frequently been held that the action and decision of the trial court upon a motion for a new trial are not subject to exception, and will not be considered upon appeal to this court, that a citation of authorities is all that is deemed necessary to answer this ground of complaint raised by appellant's counsel. Underwood v. Commonwealth, 119 Ky. 384, 84 S. W. 310; Roland v. Commonwealth, 119 S. W. 760; Jenkins v. Commonwealth, 113 S. W. 846; Gipson v. Commonwealth, 118 S. W. 334; Commonwealth v. Huber, 126 Ky. 456, 104 S. W. 345, 31 Ky. Law Rep. 929; Thomas v. Commonwealth, 111 S. W. 286, 33 Ky. Law Rep. 849.

The tendency of courts generally, and of this court in particular in its more recent decisions has been to break away from technical rulings and to examine the record with a view of ascertaining whether or not the accused had been given a fair trial; and, if upon such examination it appears that during the progress of the trial no substantial errors were committed such as would be calculated to prevent the accused from having substantial justice meted out to him, the judgment has been affirmed. Applying that test to the case under consideration, we are of the opinion that the accused was afforded every opportunity to fully and fairly present his theory of the case to the jury, and he did so, but the jury, as it had a right to do, accepted rather the theory of the commonwealth as to how the difficulty was brought on, and who was at fault, and found against accused. There being ample evidence to support the finding of the jury, in fact the preponderance of the evidence being in favor of such finding, we are of opinion that the judgment should be, and it is, affirmed.