## Oakley v. Commonwealth.

(Decided April 21, 1914.)

### Appeal from Graves Circuit Court.

1. Criminal Law—Motions for New Trial—Newly Discovered Evidence.—A new trial will not be granted on the ground of newly-discovered evidence unless the party asking therefor shall, in addition to the other requisites file his own affidavit setting out that he did not know, and by the exercise of reasonable diligence could not have known of the existence of the evidence in question until after the trial had concluded.

2. Criminal Law—Trial—Instructions—Testimony of Accomplices.—Where in a prosecution for horse stealing, the theory of the Commonwealth was that defendant was guilty of the crime, having induced another to obtain from a livery stable a horse and buggy which defendant stole; and the theory of defense was that defendant purchased the horse and buggy from the person who obtained it from the livery stable, either the one or the other of said persons was guilty; under the theory neither of the prosecution nor of the defense could both be guilty of the crime; the parties therefore were not accomplices, and the court did not err in refusing to instruct under Section 241 Criminal Code.

HESTER & HESTER and W. S. FOY for appellant.

JAMES GARNETT, Attorney General; D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

L. M. Oakley was indicted, tried and convicted in the Graves Circuit Court of the crime of horse stealing, and from the judgment of conviction, he appeals.

His chief complaint is that the lower court erred in denying to him a new trial upon the ground of evidence discovered after the trial.

To present the parties more closely connected with the crime, we adopt a portion of appellant's brief. "He (appellant) is now just twenty-one years old, and made his home with his widowed mother at Paris, Tenn., and

had a married brother living at Murray, an adjoining county to this one. He was a laborer about Paris (Tenn.), and a few days previous to this alleged crime, he collected his wages from his last employer, and being desirous of taking a small recreation, and of seeing a bit of the world, went from his home to Fulton, in Fulton County, Kentucky, and about thirty miles distant from his home town, for the purpose of seeing a carnival. After spending a few days there, he went to Mayfield, Kentucky, on his way back home, there to spend a night and see the town. When he detrained there, he saw two persons at the depot whom he had seen a few times and whom he slightly knew, one being an old man by the name of Jones Manning, an itinerant, imbecile, wandering fiddler of no musical attainments, but capable of sawing upon his fiddle with the bow, and of collecting up a few nickels from any attending sightseers. The other was a married woman who lived near Paris and had her two small children with her. She approached defendant with a request that he give her some financial aid to get back home, and this old man gave him directions to the Rogers boarding-house on Broadway, whither he went and found lodgings for the night, and also furnished this Mrs. Rose with the money to pay for her lodging there with her children.''

Early the next morning, Manning went to a livery stable and procured a horse and buggy, paying the owner two dollars and fifty cents for the hire of same, to be driven to Cuba, a near-by town, and he drove it from the stable to the lodging house and there turned same over to the defendant; and defendant then took Mrs. Rose into the buggy and drove to Murray, about twenty miles from Mayfield, where he remained that night. He then proceeded to his home at Paris, Tenn., and after trading the horse and buggy for another horse and buggy returned to Murray, and was arrested for the crime of which he was convicted.

Manning testified that he met with the defendant at Fulton a day or two before this meeting at Mayfield, and that defendant told him the woman, Mrs. Rose, was his wife; that they all came to Mayfield together; that they went together to the boarding-house, and all stayed there that night, defendant and the woman occupying one bed in a room, and he the other; that the next morning, the defendant told him to go to the livery stable and

get for him a horse and buggy as he wanted to drive to Cuba; he (Manning) went to the stable, but was refused the use of the conveyance except upon payment in advance; he returned to the defendant, got the two dollars and fifty cents demanded, went back to the livery stable, gave the owner the money, and the horse and buggy was delivered over to him. He in turn delivered it to defendant.

Defendant's claim was that Manning on the morning after his arrival in Mayfield offered to sell him a horse and buggy cheap, and that after giving the outfit a trial by driving around town, he purchased it from Manning, paying him fifty dollars therefor.

The owner of the horse and buggy testified that Manning came to hire the horse and buggy, and that he refused to let Manning have it without payment in advance; that Manning thereupon went back to the boarding-house and immediately returned with the money. He also testified that the horse was worth eighty dollars, the buggy forty dollars and harness seventeen dollars, and this testimony is uncontradicted.

The officer who brought Oakley back to Mayfield testified that defendant told him that he got the horse but that he was going to hold Manning between him and the law; that Manning went to the stable and got the horse, and that the reason he went so far was that he knew they would be looking for the horse.

It is clear that the defendant or Manning stole the property. It is not reasonable to believe that this old, demented man, who was well-known in Mayfield, would have attempted such an undertaking. Nor is it reasonable to suppose that defendant, who was acquainted with Manning, could be induced to believe that Manning was the owner of this property.

1. It is insisted that the court should have instructed the jury under section 241, Criminal Code, it being claimed by appellant that Manning was an accomplice.

But the evidence does not bear out this contention. Under the Commonwealth's theory and evidence, Manning as a matter of accommodation, went to the livery stable for appellant and obtained the horse and buggy, without knowledge of the intent of appellant to steal same. On the other hand, under the theory and evidence for appellant, it was claimed that Manning stole the

horse and buggy and sold same to appellant, the latter having no knowledge that it was stolen. There is therefore in the theory of neither party, any claim that both were guilty. Either appellant alone is guilty, or Manning alone is guilty. This was equally true under the theory of the defense as well as of the prosecution; and the parties were not accomplices. Commonwealth v. Barton, 153 Ky., 465.

2. The newly-discovered evidence upon which a new trial was sought, as set out in the affidavit of the proposed witness, a Mrs. Ferguson, was as follows:

"She (affiant) says that last fall a year ago, she and her family resided near the southwest part of May-field, Kentucky, and at that time, the said Manning frequently stopped at her house with an old fiddle which he would frequently try to play for the entertainment of her smaller children; that on several of these occasions, this old man would talk about this horse matter, and said to her and others also when she was present, that he got that horse from Willett's livery stable, and that he did sell it to a fellow named Oakley; that she does not remember the sum certain which he claimed Oakley paid him for the horse, but according to her recollection, he named a sum that was, or was about fifty dollars."

In the case of Ellis v. Commonwealth, 146 Ky., 715, 143 S. W., 425, this court said that the practice as to granting new trials for newly-discovered evidence is the same in criminal as in civil cases. And that it is the settled and well-known practice in civil cases that a new trial will not be granted on the ground of newly-discovered evidence, unless the party asking a new trial, in addition to the other requisites, files his own affidavit setting out that he did not know, and by the exercise of reasonable diligence could not have known of the existence of the newly-discovered evidence until after the trial had concluded.

This, appellant failed to do, for which reason the lower court properly denied the motion for a new trial upon that ground.

The judgment is affirmed.