## Riley v. Commonwealth.

(Decided June 15, 1934.)

J. B. EVERSOLE for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Jerry Riley, and his brother, Robert Riley, were by the grand jury of Perry county jointly indicted for the willful murder of the deceased, George Flanery.

Upon their trial at the February, 1934, term of the Perry circuit court the appellant, Jerry Riley, was found guilty of murder and his punishment fixed at confinement in the state penitentiary for life, and his brother and co-defendant, Robert Riley, was found guilty of voluntary manslaughter and his punishment fixed at ten years' imprisonment therein.

Motion and grounds for a new trial were filed, which were considered by the court and sustained as to Robert Riley but overruled as to Jerry Riley, a new trial denied him, and judgment pronounced on the verdict. Hence this appeal.

This tragedy occurred at the home of the codefendant, Robert Riley, in the village of Lothair, Perry county, Ky., at about the dusk hour of an election day in August, 1933. The deceased, George Flanery, and the codefendant Robert Riley had been loafing and drinking together about the town during much of the day, when, about an hour of dusk, Robert Riley was, owing to his much intoxicated condition, helped in going home by his brother, the appellant, Jerry Riley and Corbett Flanery, a brother of the deceased. About an hour later George Flanery, the deceased, who was also, due to his like intoxicated condition, helped by his friend, Bert Mobilini, started on his homeward way, which led by the home of Robert Riley, when it appears that his boisterous conduct and drunken and abusive talk and shouting was such as attracted the attention of those whose homes he passed. The Riley boys were on the porch of their home, which was about four feet from the street, and as Flanery passed, Jerry Riley laughed and perhaps made certain gestures which incensed Flanery, as he thought Jerry was making fun of him. So feeling, he stopped after passing the gate a few feet and inquired of Jerry what he meant by his laughing at him. Receiving no reply, and becoming more incensed, he turned and went back, over the protest of his friend, Bert Mobilini, to the Riley gate to right his fancied grievance.

The evidence as to what occurred and who was the aggressor in the quarrel and fight and fatal stabbing which followed is as to many of its material facts directly contradictory and conflicting. According to the proof for the commonwealth as detailed by Bert Mobilini and corroborated by other of its eyewitnesses

to the difficulty, Bert and the deceased, George Flanery, were on their way to George's house, when, as they passed nearby Rob Riley's gate, Jerry Riley came out on the porch and laughed at George Flanery, when "George stopped and asked what he was laughing at him fer and Jerry never give him no answer"; that as he got up to the gate, Rob Riley came running off the porch at him and George commenced fighting; that he, the witness, asked them to go back to the house, but "they wouldn't say nary a word but kept on fighting and George tore loose from me and throwed me back out in the road and when I got up George was over inside and George Flanery and Rob Riley was standing up in Rob's yard afighting [near the porch] and Jerry Riley then took his left hand and got hold of a post and leaned out from the porch and cut George Flanery in the side and George, he sunk down, and Rob hit him while he was sunk down and I grabbed a board and started to hit Rob with it and old man Riley and George Friley took the board away from me and told me to not do that, that they would get George out of there without getting him hurt and I told them they wouldn't have, he was already cut." Further, he stated that when Rob Riley grabbed George Flanery at the gate, George went inside where they continued fighting one another with their fists and had moved over by the porch, when Jerry, while standing on the porch, reached out and cut George Flanery with a big "dirk knife" as stated.

Also, Mollie Minniard, an eyewitness, stated that when George turned and went back to the gate, the defendant Rob Riley met him there and "spoke at George and hit him and Rob was pulling on him on the inside trying to pull him in and Bert Mobilini was pulling on him on the outside trying to pull him out"; that Rob jerked him in; that they were fighting and wrestling around, when Jerry Riley, who was standing on the porch with his hand on the post, swung around and cut George; that she didn't see the knife, but saw him "make the sign and then Rob beat on him again"; that he sunk down and "Rob Riley beat on him again, commenced beating him over the head and then Bert Mobilini picked up a plank and was fixing to hit Robert Riley and Butler Friley and George Friley took it away from him."

Corbett Flanery stated that as he helped Jerry Riley take his brother Robert home about an hour before the fight, Jerry had a "dirk knife" which Robert asked him to let him have, but he refused.

The uncontradicted evidence is to the effect that both the deceased Flanery and Robert Riley were each unarmed and having a drunken fist fight while the appellant, Jerry Riley, when he entered into their drunken fight, is shown to have been sober and armed with a large "dirk knife." Also the undisputed evidence is that the appellant, Jerry Riley, is a small man some thirty-seven years of age, weighing, he testifies, about 118 pounds, as was also his brother, Robert Riley, a small man, while the deceased, George Flanery, was a younger and much larger man, weighing some 170 pounds or more and having a bad reputation for being quarrelsome and violent when drinking.

On the other hand, the evidence for the defendants is, as detailed by Robert Riley and which is substantially the same as the testimony given by the appellant, Jerry Riley, that they were upon this occasion both at Robert Riley's home when they heard George Flanery coming up the street "hollering and cussing"; that he and Bert Mobilini passed their home; that George was drunk; that after they had gotten several yards beyond their gate, Jerry Riley, who was on the porch with him, laughed, when the deceased, Flanery, turned and began cursing him, calling him, Robert, a "God damned son of a bitch"; that he saw Bert Mobilini trying to prevent George from coming back to the house, but that George returned to the gate, when he met him there and tried to persuade him not to come inside, but that George broke loose from him and came on inside and struck him, Robert, in the temple and then in the stomach and knocked him out; also that the later fight between the deceased, Flanery, and Jerry Riley took place after he, George, was knocked out, and that he did not see any part of it.

Jerry Riley's testimony is, as stated, practically the same; that he was not laughing at George or Bert; that George had entered the yard and knocked Robert Riley down and then said to him, "I aim to kill you next," when he had told him he wanted no trouble but that, after knocking Robert out, the deceased advanced on him, striking at him, and that he struck back with a

knife, when George turned and walked off; that Bert Mobilini was at the gate with a plank in his hands; that Robert Riley was still on the ground when he cut George Flanery and that he did so because he thought George was going to kill him; that he didn't know whether George was armed or not, but thought he had something in his hand.

Several other eyewitnesses to the difficulty testified for the defendant to practically the same facts, corroborating the testimony of the Rileys.

A motion for a peremptory instruction was at the conclusion of the commonwealth's testimony made by the defendants and again renewed at the close of all the evidence, which was overruled.

Upon this conflicting evidence the jury, under the instructions of the court, found the defendant guilty of murder, when he was thereupon sentenced to life imprisonment. The appellant, Jerry Riley, seeks a reversal of this judgment upon the following grounds:

(1) The court erred in the admission and rejection of evidence.

(2) The court failed to properly instruct the jury upon the law of the case, and gave instructions prejudicial to the substantial rights of appellant.

(3) The verdict of the jury and the judgment of the court is not supported by the evidence, and the punishment inflicted is excessive and flagrantly against the evidence.

(4) The verdict of the jury was procured through passion and prejudice.

Appellant having considered and argued grounds one and three together, we will likewise so consider and hereinafter dispose of them and now turn our attention to the second objection urged, that the court failed to properly instruct the jury.

The court's instructions as herein given the jury we find were very full, and clearly it was the court's intention to give to the jury thereby the applicable law covering all the evidence and opposing theories of the parties based upon the issues raised thereby. First defining the terms used, eight instructions followed: Upon murder, voluntary manslaughter, conspiracy, protection

of home and family, self-defense, another covering the jury's right, under the instructions as given, to acquit or convict both defendants or to convict one and acquit the other or to find one guilty of murder and the other of voluntary manslaughter or both guilty of murder or manslaughter, or to convict one of either offense and disagree upon the verdict as to the other, and finally the "reasonable doubt" instruction.

Appellant argues that the murder and manslaughter instructions were erroneous in that they left the question of deciding whether the danger was real or apparent to the jury, when it should have been told that the appellant alone was the sole judge of whether or not the danger was real or to him apparent. However, conceding arguendo that instructions 2 and 3 as given are erroneous, as subject to the criticism made of them in this respect, in that by the language of each the jury was told that if it should believe from the evidence beyond a reasonable doubt that the defendant "not in the necessary or reasonably apparent necessary defense of himself or of Robert Riley * * * has stabbed George Flanery" that it would find him guilty of murder under instruction 2 or voluntary manslaughter under instruction 3, and omitted from the instructions the words "to the defendant Jerry Riley real or apparent," we are yet of the opinion that the error is not a substantial or reversible one in view of the well-established rule of construction of instructions given a jury being that they are to be considered as a whole and that an omission occurring in one instruction may be supplied and cured by reference to another. Bramel v. Bramel, 101 Ky. 64, 39 S. W. 520, 18 Ky. Law Rep. 1074. That is to say, that though one or more of a series of instructions may in some respect or particular be defective or misleading, yet the judgment will not be reversed therefor where the jury could not have been misled by it when considering all the instructions together. In the light of such rule, we are of the opinion that the complained of defect or omission in instructions Nos. 2 and 3 is cured or could not have been misleading to the jury when considered by the jury with the self-defense instruction No. 6, wherein appear and are expressly given the aforesaid words, "that it was necessary or believed by him in the exercise of a reasonable judgment to be necessary to so cut, stab, * * * in order to avert that danger real, or to him apparent."

Further we are of the opinion that instruction No. 4, given upon the theory of a conspiracy or an "aiding and abetting" instruction, was not improper or erroneous upon the ground alleged of there being no count in the indictment charging that the defendants had conspired with or aided or abetted each other in the commission of the charged crime, and that there was no evidence supporting the aiding or abetting instruction.

In the instant case the defendants, Jerry Riley and Robert Riley, were by the indictment jointly charged as principals with the murder of the deceased George Flanery. In the case of Terhune v. Commonwealth, 144 Ky. 370, 138 S. W. 274, 275, the court, speaking through Judge Miller, said:

"Section 122 of the Criminal Code requires that the indictment must contain 'a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case.' Construing this section in Mulligan v. Commonwealth, 84 Ky. 233, 1 S. W. 419 [8 Ky. Law Rep. 211], the court said: 'The object of the indictment is to make known to the accused with what particular crime he is charged, and that the commonwealth will attempt to prove it as charged. So to indict both the principal and aider and abettor as principals, they are notified that the commonwealth can and will attempt to prove, in order to make out their crime, that one did the principal act and the other aided and abetted, and may prepare their defense accordingly.' "

In the Mulligan Case, supra, the court in its opinion further said:

"We conclude, therefore, that the commonwealth may, if it chooses, indict both principal and aider and abettor jointly as principals, and secure a conviction against both without violating the rule of the Code, supra, because they are then furnished with a statement of the facts constituting their crime. * * * By this course the commonwealth cannot be wronged, and the defendant cannot be taken unawares or by surprise, because the commonwealth

informs him by a full statement of the facts of which he is charged.''

Robert Riley was present and was actively engaged in fighting the deceased, when, according to the commonwealth's evidence, Flanery was stabbed by his brother, Jerry Riley. Whether in so doing he was acting in concert with and aiding and lending encouragement to his brother Jerry, the perpetrator of the crime, and with knowledge of his intent, was evidence supporting this instruction as given where, as here, they were both indicted as principals. Combs v. Commonwealth, 224 Ky. 653, 6 S. W. (2d) 1082. Under the legal principles announced in these cases, we conclude that appellant's criticism of this instruction is not to be sustained.

We next come to the further objections raised by appellant, that the verdict of the jury and the judgment of the court is not supported by the evidence and that the verdict of the jury was procured through passion and prejudice.

From our summary of the conflicting evidence here introduced and heard by the jury, we are constrained to conclude that these alleged grounds for a reversal should not be upheld. There was here evidence detailed by the commonwealth's witnesses that the appellant, while he was not being attacked or threatened by the deceased and while the latter was engaged in a drunken fist fight with his brother and both unarmed, reached from the porch and mortally wounded George Flanery by stabbing him in the chest with his dirk. The jury was told by the self-defense instruction No. 6 that unless it believed that the appellant in so stabbing the deceased Flanery did so in the belief that it was necessary or to him appeared necessary in order to avert danger, real or apparent to him, of death or great bodily harm to himself or to his brother, Robert Riley, that it would find him guilty of the offense charged. The jury heard detailed all the facts and circumstances under which this. difficulty and killing occurred. It heard the evidence detailed both by the appellant and his witnesses and those for the commonwealth and had the opportunity of observing their conduct and demeanor while on the witness stand, and thereupon permitted the evidence of the commonwealth's witnesses and the proven facts and circumstances to outweigh the contradictory

testimony of appellant and his witnesses in determining what should be its verdict. No rule is better established in this state than that a case will not be reversed merely because the jury gave greater weight to the evidence of one set of witnesses than it did to that of another. Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298; Watkins v. Commonwealth, 227 Ky. 100, 12 S. W. (2d) 329. It is the conceded province of the jury and not of the appellate court to determine the guilt or innocence of one charged with crime, and its verdict given under the proper instructions will not be disturbed if there is any competent evidence supporting it. Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190. In the case of Ratliff v. Commonwealth, 182 Ky. 246, 206 S. W. 497, 502, the appellant there, as here, at the close of the testimony moved the court to direct a verdict in his favor. The motion was overruled, and the appellant, complaining upon appeal of the ruling, insisted that the verdict of the jury was not sustained by the evidence, and that the jury was caused to make the verdict under the influence of passion and prejudice. The court, in answer to the contention, said:

"A reference to the statement of the facts, as proven by the evidence, dissipates any basis for the contention that there was a failure of proof of facts and circumstances tending to prove the guilt of appellant. It is the doctrine, established by a continuous line of adjudications in this jurisdiction, that where there is any evidence, however slight of the guilt of the accused, the case should go to the jury. Johnson v. Com., 179 Ky. 40, 200 S. W. 35; Gordon v. Com., 136 Ky. 508, 124 S. W. 806; Ockerman v. Com., 176 Ky. 753, 197 S. W. 385; Barnes v. Com., 179 Ky. 725, 201 S. W. 318; Johnston v. Com., 170 Ky. 766, 186 S. W. 655; Little v. Com., 177 Ky. 24, 197 S. W. 514; Vowells v. Com., 83 Ky. 193; Patterson v. Com., 86 Ky. 313, 5 S. W. 765, 9 Ky. Law Rep. 481; Com. v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141."

Coming now to the final objection made, that the jury was influenced in returning its verdict by passion and prejudice. The appellant and the deceased had both been friends and neighbors in this little town of Lothair, and those who testified in the case were for the most part eyewitnesses of the difficulty and for the most part friends or acquaintances of both of the par-

ties. The circumstances of the trial were not such as were reasonably calculated to arouse passion or prejudice on the part of the jury, nor is there evidence that such was their state of feeling, nor do we conclude that such is made manifest by its verdict, even though based upon the facts of Flanery's killing as told the jury by the commonwealth's witnesses. Certainly a verdict, only because it is believed to be severe, is not to be taken as sufficient evidence of passion and prejudice to justify a reversal of the judgment. If such were the rule, no verdict where considered severe could stand. We find after a careful study of the evidence that there is no merit in this contention. It is altogether within the province of the jury as to the punishment to be inflicted upon one charged with crime under the testimony and the law governing the case. Its verdict is conclusive unless so palpably against the evidence as to induce the belief that it was given under passion or prejudice. McCurry v. Com., 205 Ky. 211, 265 S. W. 630; Stephens v. Com., 226 Ky. 437, 11 S. W. (2d) 111. Such we do not find was here the case.

Judgment affirmed.