# Jones v. Commonwealth.
### (Decided May 1, 1936.)

C. A. WICKLIFFE for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Affirming.

Willie Jones appeals from a five-year sentence for robbery.

The first ground urged for a reversal is that the verdict is flagrantly against the evidence.

The evidence for the commonwealth presents the following situation: Feltner Travis, the prosecuting witness, is a boy 16 years old, and small for his age. About 6 p. m. on November 13, 1935, he was on his way home from football practice, and was walking along the Illinois Central Railroad tracks in Paducah. He had with him his school books and about 45 cents. According to his testimony, he met appellant, who, after asking some questions about catching a train to Fulton, assaulted him and he gave up the 45 cents in order to avoid further assault. He called an officer and they heard some one on the railroad screaming. When they reached the point of the screaming, they found appellant with a negro woman whom he had assaulted and claimed that she was his wife. He told the detective that the boy who had assaulted him had gotten 45 cents of his money. Thereupon appellant jerked his hand out of his pocket and threw the money down on the railroad. At the trial Travis identified appellant as the one who had robbed him. He admitted that when first asked if appellant was the man who robbed him he stated that he did not know; he was scared at the time. He also admitted that he stated to the officers that the man who robbed him was "a big black negro with overalls on." He further stated that the man who robbed him would weigh about 120 or 125 pounds, and had on a pair of overalls and a black coat. He also testified as follows:

"You did say at that time you did not know whether this was the boy who robbed you? A. Yes, sir.

"Q. You have made up your mind since then that he is the same fellow? A. I knew it all the time. I knew it then and I know it now."

The next morning young Travis and his father went to the place of attack, and according to young Travis they found a dime and a nickel, and according to the father two dimes and a nickel.

On the other hand, appellant testified in brief as follows: He was arrested about 7 o'clock on the even-

ing of November 13th. Prior to his arrest he had never seen Travis. He was at home about 5 o'clock, and he and Mr. Dewey Yates walked up the track together. From that time on he stayed in his room playing with a little child. Later on he heard a woman scream, and he went to the railroad track to investigate it. While there Mr. Yates and the Travis boy came up. Yates asked Travis if appellant was the boy who robbed him. Travis said: "No, I don't think so. He was a big, black negro and had overalls on." At that time appellant had on a pair of pants, a red sweater, and a leather slicker. He never at that time pulled his hands out of his pockets and threw any money away. He knew nothing about the boy being robbed. When he got over to the railroad track the woman kept on screaming. He did not have the woman down on the ground. He did say the woman was his wife, and he said it because he did not think any other woman had a right to be there. He was just standing there looking at her. Joe Green, a policeman of the city of Paducah, testified that he asked Travis if appellant was the boy who robbed him, and he said he did not know. He also asked him twice if he could identify the negro, and he said he could not. "He was crying and kept wanting his father to take him home." Dewey Yates, special officer of the Illinois Central Railroad Company, testified that he saw appellant around 5 o'clock and talked to him. He afterwards went to his office, where Mr. Murphy told him that the Travis boy had been robbed, and to take him home. Travis remarked at the time that the fellow who robbed him was "a big, black negro with overalls on," and stated that the negro said he was going to Fulton. He and the boy then went up the track and found the boy's books down in the fill about 12 feet. He then heard a woman scream. He went to where they were and flashed his light and found Willie Jones and the woman there. He then arrested Willie Jones and asked the Travis boy if that was the boy who robbed him, and Travis said it was dark and he did not know. On being asked if he did not hear Travis tell Joe Green and Buddy Mercer that he could not identify appellant, he answered: "He said he did not know for sure." When he appeared on the tracks where appellant and the negro woman were, appellant said: "I thought this was my wife." Appellant's evi-

dence that he was at home until the woman on the railroad track was heard to scream is corroborated by his mother, his half-brother, and the latter's wife.

In support of the position that the verdict is flagrantly against the evidence, appellant stresses the following facts: Immediately after the alleged robbery, Travis was uncertain as to whether appellant was the man who robbed him, and the description which he gave of the man who robbed him did not correspond with appellant's appearance and dress at the time. Furthermore, it is pointed out that the prosecuting witness and his father, who claimed to have found the next morning the money that was thrown away by appellant, differed as to the amount; the prosecuting witness saying that they found a dime and a nickel, and his father saying that they found two dimes and a nickel. It is a rare thing that there are not some inconsistencies in the testimony of a witness, and when it is remembered that at the time of appellant's arrest Travis was badly frightened and was crying and begging to be taken home, it hardly can be said that his statements then made were sufficient to discredit his identification of appellant and render the verdict of the jury flagrantly against the evidence. Nor is the contention strengthened by the inconsistency in the statements of the father and son as to the amount of money found. Some inconsistency between the statements of two witnesses is often more persuasive than when they tell precisely the same story. Aside from all this, the credibility of the witnesses was for the jury, and this court will not disturb the verdict because the jury believed the witness for the commonwealth rather than appellant and his witnesses. Baker v. Commonwealth, 200 Ky. 294, 254 S. W. 887; Riley v. Commonwealth, 255 Ky. 68, 72 S. W. (2d) 754.

It is further claimed that the court should have granted a new trial on the ground of newly discovered evidence. The evidence was contained in an affidavit of John Bass, who deposed that about 6 o'clock, or maybe a few minutes before 6 o'clock, on the afternoon of the robbery, he and another man, now dead, met a large black negro man who was dressed in overalls and had on a cap, and who inquired of affiant about catching a train to Fulton, Ky.; that after passing a few

words with this man affiant went in the direction of Cox's crossing, and in a few minutes heard some person like a woman or small child call, and the sound came from the direction in which the big black negro man had gone. The new trial was properly refused for the reason that appellant did not file his own affidavit to the effect that he did not know, and by the exercise of reasonable diligence could not have known, of the existence of the newly discovered evidence until after the conclusion of the trial. Oakley v. Commonwealth, 158 Ky. 474, 165 S. W. 691; Ellis v. Commonwealth, 146 Ky. 715, 143 S. W. 425.

Judgment affirmed.