## Stafford v. Commonwealth.

(Decided May 22, 1936.)

G. L. DICKINSON and ZEB A. STEWART for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Affirming.

Bill Stafford appeals from a two-year sentence for grand larceny.

The first ground urged for a reversal is that the evidence is not sufficient to sustain the verdict.

The record discloses the following: The property stolen was a cream-colored Chevrolet roadster belonging to James Fox, a teacher in one of the rural schools of Knox county. Owing to the bad condition of the road, it was necessary for him to leave his car about a mile distant from the school house. The place was near the home of Jim Foley. On the morning of September 5, 1935, Fox drove his car to the usual parking place about 7 o'clock in the morning and left it there. On his return about 5 o'clock in the afternoon the car was gone. Fox had purchased the car from Charlie Kinder, and the car was known in the community as "the Charlie Kinder car." The purchase price was $60. Tom Tye, who lives between the parking place and Barbourville, and who had known appellant for 20 years or more, and who was familiar with the appearance of the car belonging to Fox, testified that on the day the car was stolen he saw the defendant driving the car toward Barbourville, and it was along about 12 o'clock. He knew of no one in the community who owned a car like the one Fox owned. At the time the car passed, his little boy was with him. On being asked if he knew whose car it was at the time he saw Stafford driving by in it, he replied: "Well, I was down working. My boy said, 'Yonder comes that boy's car.'" Herman Tye, the son of Tom Tye, testified that he recalled the day when the Fox boy's automobile was stolen. He saw a man in a car, but did not learn that the car had been stolen until the next day. Bill Stafford was in the car. At that time he was by the side of the road with his Daddy. He had known Bill two or three years. The car was "sorter of a cream color," and was a one-seated car. He had ridden in it with Mr.

Fox. On being asked if he recognized the car before he recognized Bill Stafford, he said, "Yes sir, whenever I saw the car, I asked daddy, 'Who is driving that car?' and then when he told me I knew who it was doing it." Jim Foley, who had known both Fox and appellant for many years, and in front of whose house Fox was accustomed to park his car, testified that he saw the car parked there before 12 o'clock on the day of the theft, and on the same day he saw appellant shortly before 12 o'clock within a quarter of a mile of the parking place and going in that direction. On the other hand, appellant denied any connection with the theft, and testified that between 12 and 1 o'clock on the day the car was stolen he was at the fairgrounds. Other witnesses testified that they saw appellant at the fair about the time the car was said to have been stolen. Ed Jackson and Charlie Hensley saw the car on the Barbourville-Pineville road some distance from Barbourville, and the driver was not appellant.

It is argued that the commonwealth's case turns solely on the evidence of Tom Tye and his son, Herman, and that neither was positive in his identification of the car or the driver, but that the conclusion of each that appellant was driving the car was reached by what the other said, which was pure hearsay. Whatever may be said of the boy's identification of appellant, it cannot be doubted that Tom Tye's evidence was positive, certain, and direct. Though he did say, "My boy said, 'Yonder comes that boy's car,'" it is apparent from the testimony, considered as a whole, that he knew the car and knew appellant, and was positive that he saw appellant driving the car in the direction of Barbourville about 12 o'clock. In the circumstances the credibility of the witnesses was for the jury, and, in the absence of other controlling circumstances, the court will not reverse a conviction on the ground that the jury should have believed the witnesses for the accused rather than the witnesses for the commonwealth Karnes v. Commonwealth, 244 Ky. 341, 50 S. W. (2d) 937; Riley v. Commonwealth, 255 Ky. 68, 72 S. W. (2d) 754.

Another contention is that the court erred in not excluding the father's statement, "My boy said, 'Yonder comes that boy's car,'" and the boy's statement, "Yes sir, whenever I saw the car I asked Daddy, 'Who

is driving that car,' and then when he told me I knew who it was doing it.'' Tom Tye's evidence as a whole shows very clearly that the only effect of the boy's remark was to call his attention to the fact that the car was coming, and that his identification of the car and appellant was the result of independent observation, and was not influenced by his boy's remark. In the circumstances the admission of the evidence was not prejudicial.

With respect to the boy's remark as to what he said to his daddy, and what his daddy told him, we need go no further than to say that the evidence was heard without objection, or motion to exclude, and where that is the case the error, if any, is not available on appeal. Crawford v. Commonwealth, 242 Ky. 458, 46 S. W. (2d) 762.

On the whole we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.